## DEAN v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 8, 1899.)

**1. STREET IMPROVEMENT—CONTRACT—EXTENT OF WORK.**

An ordinance provided that D. street, from H. to E. streets, be graded. Proposals were made for doing the work by the yard. In the agreement for doing the work, it was described generally as the grading of D. street from H. to E. street; but it was provided that the contractor should strictly conform to the specifications in the contract, and that he would complete the entire work in accordance therewith. A plan attached laid out D. street only part way to E. street, but was indorsed, "Plan * * * for regulating * * * D. street from H. * * * to E. street;" and the estimated work to be done was stated on the plan, and was based on it, and the measurements thereon shown. *Held*, that the contract was only for the work as shown by the plan.

**2. SAME—CERTIFICATE OF COMPLETION.**

Under a contract for street grading, providing that the contractor shall not be entitled to payment till the work is completed as agreed, and such completion is certified by certain officers, but that the city shall not be estopped by such certificate from showing the true amount and character of the work, the city may show the incorrectness of such a certificate, but has the burden of proof.

**3. EVIDENCE—OPINION.**

It being apparent that, if soft mud had been forced out by the filling in of earth, the displaced mud must have spread out, testimony of witnesses that there was no such spreading out of mud is a statement of facts, and not an opinion, which tended to show that there had been no large amount of filling absorbed in that way.

Barrett and Rumsey, JJ., dissenting.

Appeal from trial term, New York county.

Action by William E. Dean against the mayor, aldermen, and commonalty of the city of New York. From a judgment on a verdict for defendant, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

L. Laflin Kellogg, for appellant.
Theodore Connoly, for respondent.

INGRAHAM, J. This action was brought to recover upon three separate causes of action: The first was to recover the balance alleged to be due for work and services performed under a contract between the plaintiff and the defendant, the second was to recover for the value of extra work done by the plaintiff, and the third was for damages caused by the defendant's preventing the plaintiff from performing the entire work under the contract. The contract was for regulating and grading Dyckman street, in the city of New York. The second cause of action was dismissed upon the trial, no exception being taken by the plaintiff. The answer of the defend-

ant denied that the plaintiff had earned the balance claimed to be due under the first cause of action, and alleged that a certain certificate given by the officers of the defendant as to the amount of the work performed under the contract was false, fraudulent, untrue, and made in bad faith, in that it did not state the true and correct amount and character of the work actually done and materials actually furnished by the plaintiff under the said contract; that the defendant had paid to the plaintiff, relying upon such certificate, the sum of $26,514.99 over and above the true value, at the contract prices, of the work and materials actually done and furnished by the plaintiff under the contract, and demanded, by way of counterclaim, a judgment against the plaintiff for that sum. And, in answer to the third cause of action, it alleged that under the contract, and the plan and specifications therein referred to, the plaintiff was not entitled to do any work except that which he actually did in the said street, and denied that the defendant wrongfully and unreasonably, and in violation of the said agreement, neglected to permit the plaintiff to furnish and provide all the materials and labor for the purpose of the performance of the work to be done under the contract. Upon the trial the third cause of action was dismissed by the court, and the plaintiff excepted; and the question as to the amount of work performed by the plaintiff under the first cause of action was submitted to the jury, who found a verdict for the defendant against the plaintiff upon the defendant's counterclaim for $20,694; and upon that counterclaim judgment was entered for the defendant against the plaintiff, from which judgment the plaintiff appeals.

The contract upon which this action was brought was executed on September 21, 1891. There was annexed to this contract a proposal for estimates for regulating and grading Dyckman street from the Hudson river to Exterior street, and setting curbstones and flagging sidewalks therein. These proposals recited an ordinance by the defendant which provided that "Dyckman street, from Hudson river to Exterior street, be regulated and graded, the curbstones set and sidewalks flagged a space four feet wide through the centre thereof, under the direction of the commissioner of public works"; and sealed estimates for this work were to be presented to the department of public works. Such proposals contained the surveyor's estimate of the nature and extent of the work to be done and materials to be furnished; and the bidders were to state in their estimates the price for excavating earth per cubic yard, the price for excavating rock per cubic yard, the price for furnishing filling per cubic yard, and the price for furnishing and setting the curbstones, new flagging, and new culvert, per square or lineal foot. In pursuance of these proposals, estimates for the work were furnished by the plaintiff and others. That furnished by the plaintiff was accepted, and the contract executed. By the contract the party of the second part (the plaintiff) agreed to furnish and provide all the materials and labor for the purpose of regulating and grading Dyckman street from Hudson river to Exterior street, and setting curbstones and flagging sidewalks therein, and to strictly

conform to the specifications contained and set forth in said con-
tract. It was further agreed that the plaintiff would complete the
entire work to the satisfaction of the commissioner of public works,
and in substantial accordance with the said specifications and the
plan therein mentioned. By the specifications which are incor-
porated in the contract, the work to be done is stated as follows:

"The street for its whole width is to be regulated and graded where required,
in accordance with the plan and profile of the said street, dated July 15, 1891,
on file in the bureau of street improvements. The carriageway and sidewalks
are to be properly shaped. That portion of the street which is above the grade
lines is to be excavated, and such and so much of the material excavated as
may be fit for the purpose, and as may be necessary, shall be filled in those
parts of the street which are below the grade lines, in the manner hereinbe-
fore provided. * * * But only the difference between the total quantity
of filling to finished grade and line as shown in cross section, and the total
quantity of excavation to the finished grade and line as shown in cross sec-
tion, with slopes in each case as herein described, will be considered as filling
to be furnished, and as such to be paid for. * * * For culverts: The
foundation shall be excavated to the depth necessary to put in the timber as
shown on the plan. This excavation shall be one foot wider than the outside
dimensions of, the culvert."

By the plan of the said street referred to in the contract and in
the specifications, there is laid out a street running from the Hud-
son River Railroad Company's tracks, adjoining the Hudson river,
to a point upon the map 1,104$^6$/$_{10}$ feet east of Naegle avenue, which
point is about 1,200 feet west of the driveway along the Harlem
river, and which it is claimed is the "Exterior Street" mentioned
in the ordinance and the contract. Upon this plan is shown cross
sections of the street from the Hudson River Railroad tracks to the
point 1,104 feet west of the driveway, showing the estimated
amount of the excavation and the filling required, and the details
of the work to be done. It is not claimed that any plan was ever
prepared showing the cross sections and the elevations and depres-
sions of the street east of this point specified upon this plan. The
plan is indorsed, "Plan and profile for regulating, grading, curbing,
and flagging Dyckman street from Hudson river to Exterior street;"
and the estimated work to be done is stated upon this plan, and
these estimates agree with the estimates recited in the proposals
upon which this contract was made. The city, thus, by preparing
this plan and profile of the work to be done; indorsing it a "plan
and profile for regulating, grading, and flagging Dyckman street
from Hudson river to Exterior street"; making its estimates as to
the work to be done based upon this plan and the measurements
there shown, and making this plan a part of the contract; provid-
ing in the specifications that the work to be done is to regulate
and grade the street for its whole width in accordance with this
plan and profile; providing in such specifications that only the dif-
ference between the total quantity of filling to finished grade and
line as shown in cross section, and the total quantity of excavation
to the finished grade and line as shown in cross section, with slopes
in each case as herein described, will be considered as filling to be
furnished, and as such to be paid for,—would seem to indicate a
clear intention that the work to be done under the contract was

only the work shown upon the plans. The work to be done is to regulate and grade the street in accordance with this plan and profile. The filling is to be determined by the grade and line as shown in the cross sections, and the quantity of the excavations to be paid for is to be determined by the finished grade and line as shown in the cross sections of this plan, and the foundations for the culvert are to be excavated to a depth necessary to put in the timbers, as shown on the plan. Thus, it is this plan, as made a part of the contract, that is to determine the amount of work to be done; and, under the express covenants of the plaintiff, he covenants and agrees that he will complete the entire work in substantial accordance with the specifications and the plan therein mentioned. The specifications state that the work to be done is to regulate and grade the street, where required, in accordance with the plan and profile, and the amount of filling and excavation is to be determined by the grade and line as shown in the cross sections on this plan. It could not have been the intention of the parties to do any work not shown upon this plan, or to regulate the street at a point not shown upon the plan, where there were no cross sections from which the work to be done could be determined, and where the culverts necessary to be put in upon the extension were not shown. It is true that the work is described generally as "grading Dyckman street from the Hudson river to Exterior street"; but there is nothing in the resolution that required the commissioner of public works to do all this in one contract, and the general description of the work to be done must be controlled by the specifications which limit such work to the portion of the street as shown upon the plan. We think, therefore, that the court was clearly right in dismissing the third cause of action.

The remaining question in the case is as to the right of the plaintiff to recover under the first cause of action, and of the defendant to recover under the counterclaim to that cause of action. The plaintiff proved the certificate of the officers mentioned in the contract, from which it appeared that the sum of $12,343 was due to the plaintiff from the defendant for work done under the contract, and then rested. The defendant then offered evidence tending to show that the certificate in question was false, and to prove the actual amount that the plaintiff was entitled to receive under the contract. By clause "T" of the contract it is provided that:

"The said party of the second part [plaintiff] further agrees that the return of the city surveyor having charge of the work shall be the account by which the amount of materials furnished and the work done shall be computed, and that he shall not be entitled to demand or receive payment for any portion of the aforesaid work or materials until the same shall be fully completed in the manner set forth in this agreement, and such completion shall be duly certified by the surveyor, inspector, and superintendent of street improvements in charge of the work, and until each and every of the stipulations hereinbefore mentioned are complied with, and the work completed to the satisfaction of the commissioner of public works, and accepted by him."

By clause "N" of the contract it is provided that:

"The said parties of the first part, their successors and assigns, shall not, nor shall any department or officer of the city of New York, be precluded or es-

topped by any return or certificate made or given by any surveyor, inspector, or other officer, agent, or appointee of said department of public works, or of said parties of the first part, under or in pursuance of anything in this agreement contained, from at any time showing the true and correct amount and character of the work which shall have been done, and materials which shall have been furnished, by the said party of the second part, or any other person or persons, under this agreement, nor from at any and at all times withholding payment of the several sums herein specified until the said party of the second part, when thereunto required on behalf of the said city, shall make and furnish sufficient and independent proof of the quantity and quality of the work and materials done and furnished by the said party of the second part, or any other person or persons, under this agreement."

The certificate of the surveyor in charge of the work (one Robert L. Waters) certified to the amount of the work done under the contract; but, under this clause of the contract above referred to, the city of New York was not precluded from showing the actual amount of the work done by the plaintiff, and the amount due from the city to the plaintiff. The defendant assumed this burden, and offered evidence tending to show that the actual amount of the filling done by the plaintiff was very much less than that stated in the certificate of the engineer. The sole question was as to the number of cubic yards of filling for which the plaintiff was to receive 45 cents per cubic yard. By the surveyor's certificate it was certified that the plaintiff had furnished 165,318 cubic yards of filling. If that was correct, the plaintiff was entitled to a verdict for $12,343.76. The evidence of the defendant tended to show that the total amount of filling furnished by the plaintiff was 79,183 yards, and, if the jury believed this testimony, the plaintiff had been overpaid the sum of $26,514.99; and for that sum the defendant asked a verdict against the plaintiff. This question of fact was left to the jury, and the jury found a verdict for the defendant for $18,000, to which the court subsequently added interest from the time of the overpayment. The plaintiff strenuously insists that this verdict of the jury was against the weight of evidence. The testimony is quite voluminous, and an analysis of it is not essential to the determination of this question. The principal objection of the plaintiff to the defendant's testimony is that it was based upon soundings made by the defendant's witnesses, who were civil engineers, upon the original surface of the ground just outside of the filling of the street, and their estimates of the amount of filling required was in the nature of a mere opinion of experts, without any solid and substantial foundation. It is quite true that none of the witnesses who testified for the defendant, and who made the estimates of the amount of filling furnished, saw the work as it was being done, but their estimates as to the amount of filling furnished were based upon this examination of the street as filled in after it was completed. The soundings in the land alongside of the edge of the filling tended to show the character of the soil underneath the street as filled in, and upon which the filling had been placed, and, if taken upon both side at intervals of 50 feet, would certainly indicate the nature of the ground upon which the filling had been placed. It is not disputed that if this filling had been placed upon the level of the ground, and the ground was able to

bear it, the amount awarded by the certificate would be largely in excess of the amount of filling that was actually furnished by the plaintiff. The question at issue is to determine how much of this filling settled below the surface of the ground upon which it was placed, or, in other words, how much of the filling was used below the original surface of the ground. The evidence of the defendant's witnesses tended to show that in all cases of filling upon soft ground or mud, where the filling, to an appreciable extent, sank into the soft surface, mud waves were caused, and that there was but slight evidence of such mud waves in this locality. The nature of the ground was also explained to the jury, and the facts observed by the witnesses that indicated to them that but a comparatively small amount of filling had sunk into or beneath the surface were stated to the jury. It is quite apparent that, if soft mud had been forced out by the filling, the mud that was displaced must have spread out in some direction; and, if there was no evidence of such spreading out or of such mud waves, it would justify a finding that no considerable portion of this filling had been absorbed in that way. This was not the evidence of an opinion of a witness, but a statement of facts observed by the witnesses, several of whom were civil engineers of prominence and recognized ability; and this evidence, if believed by the jury, tended to show that no such amount of filling could possibly have been used as was claimed by the plaintiff. On the other hand, there was evidence produced by the plaintiff which tended to show that a considerable portion of the land over which this street passed was extremely soft, and a large amount of filling was buried beneath the original surface of the land; but this, we think, was a fair question for the jury to determine from the evidence, and, while the burden was upon the defendant to show that the certificate given under the contract was false, the verdict rendered in favor of the defendant was sustained by evidence which, if believed by the jury, necessarily forced them to the conclusion to which they arrived.

The court charged the jury:

"The burden of proof upon this point is therefore upon the defendants; and the question therefore is, have they overcome the plaintiff's case, as supported by the certificates, and the proof given by the plaintiff in rebuttal of the defendants' case, by sufficient evidence on their own part. They are bound to do it by proof of facts and circumstances which are convincing, and not by mere theory not founded on the actual facts."

That was a correct statement of the duty of the jury, and certainly as favorable to the plaintiff as was justified. We think, therefore, that the finding of the jury as to the amount of filling actually furnished by the plaintiff was supported by the evidence, and the court would not be justified, upon that ground, in setting aside the verdict. The effect of this certificate is entirely different from that given under a contract whereby it is agreed that the certificate of an engineer or architect shall be binding and conclusive upon both parties as to the amount payable under the contract. Under contracts of the character of the one under which the plaintiff did the work in question, while a certificate is essential to enable the plaintiff to recover,

that certificate is, by the express terms of the contract, not to pre-
clude the defendant from proving, upon the final settlement of the
amount due under the contract, the actual amount of the work done;
and thus the burden was upon the defendant to overcome by a pre-
ponderance of evidence the presumption which followed the granting
of the certificate, that the certificate was in fact erroneous, and that
the work actually done was less than that stated in the certificate.
As before stated, the defendant assumed that burden, and we think
that the evidence was sufficient to justify the submission of that ques-
tion to the jury, and their verdict should not be interfered with.
This voluminous record has been examined with care, and we have
not attempted to analyze the evidence, but have simply stated the
general conclusions to which we have arrived.   From the whole case,
we think the judgment was correct, and that there was no error com-
mitted which would justify a reversal.

The judgment is affirmed, with costs.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

BARRETT, J.   I am unable to concur with Mr. Justice INGRA-
HAM regarding the dismissal of the plaintiff's third cause of action.
He holds, in effect, that the plan, and not the contract, determines
the amount of work to be done.   I do not think that this is in accord-
ance with the language used.   The quantum of work is clearly stated
in the contract.   It is to regulate and grade a street between desig-
nated limits.   This provision stands by itself, and is plain and ex-
plicit.   A later clause provides that the "entire work" shall be done
"in accordance with" the specifications and plan.   The "entire work"
thus referred to can be nothing but the work of regulating and grad-
ing the street between the designated limits.   It is this entire work
which is to be done "in accordance with" the plan.   That does not
mean to the extent defined by the plan, but in the manner there pro-
vided.   What the plaintiff was to do—the extent and general scope
of the work—is thus plainly stated in the contract.   But there were
a multitude of details to be arranged for, and this was the office of
the plan and specifications.   The former, as well as the latter, fur-
nished a guide in the prosecution of the work.   It showed the grade
to which it was necessary to bring the street, either by filling or ex-
cavation, the position of the culverts, and similar details of the work.
In these particulars it both guided and controlled the plaintiff, but
it was not intended to limit the amount of work which he was to do.
Both the plan and the specifications were subsidiary to the contract.
Suppose the plaintiff had contracted to grade the street for 100 blocks
for a fixed sum, and the plan had covered but 1 block; is it con-
ceivable that he would have been entitled to his money upon doing
the distance set out in the plan?   If the plan, and not the contract, is
to govern, the rights of the parties may depend upon the manner in
which subordinate city officials perform ministerial acts.   It is not
possible that a surveyor can cut down a contract to grade a mile of a
street to a contract to grade but a block by making an insufficient
plan, or that he can abrogate a contract entirely by making no plan.

whatever.  The history of the contract favors this view.  It originated in a resolution of the common council passed in May, 1891, that "Dyckman street, from Hudson river to Exterior street, be regulated and graded."  At this time no plan was in existence.  The proposal for bids, which is made part of the contract, recites this resolution, and states that "sealed estimates for the above work" will be received by the department of public works.  There follows the surveyor's estimate of the amount of the work, but it is expressly provided that this estimate is only approximate, and that:

"Bidders must satisfy themselves, by personal examination of the location of the proposed work, and by such other means as they may choose, as to the accuracy of the foregoing estimate, and shall not, at any time after the submission of an estimate, dispute or complain of such statement, nor state that there was any understanding in regard to the depth of the excavation to be made, or the nature or amount of the work to be done."

What work would it be reasonable for the contractor thus to examine, but the work which the common council had resolved should be done, and which the department was undertaking to do?  Here, as in the body of the contract, the work is clearly defined, and the definition is in no way qualified by the context.  Here, as in the contract, a latter clause requires the bidder to "complete the entire work to the satisfaction of the commissioner of public works, and in substantial accordance with the specifications hereto annexed, and the plan therein referred to."  I think it would be quite as reasonable to say that the plaintiff was to do only so much of the work as the commissioner might elect, as that he was absolutely limited to that portion of the work shown upon the plan.

It is urged that the surveyor's estimate in the proposals is identical with that indorsed upon the plan, and that this indorsement applies only to that part of the work which the plan covers.  Assuming that this was patent to the bidder, I do not see how it aids the defendant.  The bidder is expressly notified that this estimate is only approximate, and that he must examine the work for himself, and draw his own conclusions.  The city is not bound in any manner by the estimate,—whether it was inaccurate as to the ground which it actually covered, or did not cover ground enough.  In no case did the city consent to accept it as an indication of the extent of the work, and certainly it cannot be fairly said that the contractor was bound to do so.  It was his right and duty to be guided by the plain language of his contract, not by this tentative estimate.

It is also urged that great practical difficulty would attend the recognition of the plaintiff's right to do the rest of the work.  I am unable to perceive the difficulty.  It may be conceded that the work could not be finished without a further plan.  It was, then, the defendant's duty to furnish one.  It could not defeat the plaintiff's right to do the contract work by refusing to disclose the exact manner in which it wished the work to be done.  The complaint alleges, and the answer admits, that the plaintiff "demanded of defendant and said commissioner that such orders and directions be made and given as will permit plaintiff to fully finish and com-

plete all the work by him to be done under said agreement" (that. is, the whole work specified in the contract proper), but that the defendant refused this demand. I think that this was a breach of the contract. The plaintiff undoubtedly took a risk in bidding upon work for which a complete plan was not in existence, since he could not tell the exact grade which would be fixed for the remainder of the work. The risk, however, was not great, in view of the fact that under this contract the plaintiff was to receive a stated sum for each cubic yard of filling or excavation.

It may be added that the legal right of the department of public works to make such a contract as is claimed to have been here made is by no means free from doubt. City officials have no authority to contract, except as directed by ordinance; and, in so far as they deviate from the resolution of the municipal legislative body, their action is void. Bonesteel v. Mayor, etc., 22 N. Y. 162. Here the resolution of the common council was that Dyckman street should be graded the whole distance from the Hudson river to Exterior street. The department was bound to carry out this mandate, and I am not prepared to say that this work, which was all of the same general kind, and easily capable of being embraced within a single contract, might be subdivided. If the work might be subdivided at all, it is difficult to see why it might not be split up into 100 different sections, to the great increase in the cost. At all events, it seems perfectly obvious that here there was no such attempt, but that it was intended to execute the resolution at one time, and by a single contract. On account of the dismissal of this third cause of action, I think the judgment should be reversed, and a new trial ordered.

RUMSEY, J., concurs.