## Walker Estate

*Harold W. Spencer,* of *Wright, Mauck & Spencer,* for accountants.

*Louis M. Childs,* of *High, Swartz & Roberts,* for executors.

TAXIS, P. J., December 28, 1959.—The account shows a balance for distribution of $55,145.73, composed of United States Treasury bills $54,138.03, and cash.

The account was filed in order to adjudicate the question whether or not a valid trust is created by the letters of October 22, 1956, and November 8, 1956.

Hervey S. Walker died on September 15, 1958, leaving a will dated December 30, 1949, and a codicil thereto dated July 27, 1954, neither of which is the subject of the present account which were duly probated by the register of wills, this county, on October 23, 1958.

Under his will, decedent bequeathed the residue of his estate in trust for his wife and issue upon terms which are not necessary to recite here.

On March 11, 1955, decedent had executed a beneficiary designation with respect to benefits which might be standing to his credit at the time of his death under the Walker Brothers Profit Sharing Plan naming Donald P. Horsey and Arthur T. Cameron as the beneficiaries. Mr. Horsey and Mr. Cameron are the executors of decedent's will.

On October 23, 1956, decedent wrote a letter to Mr. Horsey and Mr. Cameron, reading as follows:

"To—Messrs. Donald P. Horsey and Arthur T. Cameron, My dear Friends: I have made during my lifetime many commitments which in the event of my death I would like to have carried out. I would like to have set aside such balance standing to my credit in the Corporation known as Walker Brothers Benefit Plan, of which the Philadelphia National Bank is Trustee, to be dispensed in such manner and in such ways as I would have done had I been making the distribution. If you will be good enough to handle this for me I will consider I have placed this sum of money at your disposal for the disposition I have discussed with you. In handling my affairs in this way I feel you will carry on in my absence as you have been familiar with while I was alive and with an appreciation of your acting in this capacity, I am Sincerely yours, H. S. Walker."

This letter was followed by another letter to Messrs. Horsey and Cameron dated November 8, 1956, reading in full as follows: "To—Messrs. Donald P. Horsey and Arthur T. Cameron, My dear Friends: I have under date of October 23rd, 1956, indicated that it was my desire you would make such adjustments and distribution of any balance standing to my credit in the Walker Brothers Benefit Plan in a manner conforming in general to what I would have done had I been making this distribution myself. In order that you may be informed as to the nature of these activities with which I heretofore have been associated, I am indicating the following list for your guidance: 1. Fellowship House of Conshohocken. 2. First Presbyterian Church, Ardmore, Pa. 3. Lafayette College, Easton, Pa. 4. Any member of my family, who in your joint opinion, may require assistance. 5. In the event my Estate should find it expedient to receive outside assistance of a financial nature it is my hope that to the extent you are able you will render this aid to my Estate. While I

have had many more activities, in general I believe the foregoing will suffice to give you a general sense of direction in handling these funds, which I would expect could be completely distributed within two years after your receipt thereof. Very sincerely, H. S. Walker."

The amount of benefits standing to decedent's credit under the plan at the time of his death was $55,149.03, and subsequent to his death the trustee of the plan, acting upon instructions from Walker Brothers, paid over the foregoing sum to Messrs. Horsey and Cameron as trustees of the trust created by the letters reproduced above. By letter of May 14, 1959, counsel for the executors of this decedent's estate advised Mr. Horsey and Mr. Cameron that the executors believed that the payment of the benefits should have been made to decedent's estate and demanded that the fund be turned over to the executors.

Messrs. Horsey and Cameron have refused to comply with this request, and, on the contrary, have filed an account with this court with respect to their administration of the fund and have advised the executors that they will request the court to award the fund in specified shares to Fellowship House of Conshohocken, First Presbyterian Church of Ardmore, Pa., and Lafayette College, these being the three institutions named in decedent's letter to them of November 8, 1956.

A hearing was held on September 28, 1959, at which time Messrs. Horsey and Cameron testified with respect to their associations with decedent and their knowledge of decedent's financial affairs, including the pattern of his giving to various institutions and, more particularly, his record of giving to the institutions named in the letter of November 8, 1956.

The issue before the court is whether the letters addressed to Messrs. Horsey and Cameron by decedent were sufficient to create a valid trust for the institu-

tions named in the letter of November 8, 1956. It is the position of Messrs. Horsey and Cameron that such a valid trust was created. The executors of the estate contend contra, that no such trust was created and that, unless a trust can be sustained under the letters, no such trust was created.

The existence of a trust depends on the intention manifested by the settlor and particularly is this true where words used appear on first impression to be precatory rather than mandatory. It has been consistently held in Pennsylvania that words such as "would like," "desire," "wish," must be construed in light of the intention of the settlor. When the use of such words connotes the imposition of enforceable duties and partake of a command they have been held to be mandatory and not precatory. "Where such words are used 'in direct reference to the estate, they are *prima facie* testamentary and imperative, and not precatory' ": Calder's Estate, 343 Pa. 30 (1941) ; Croft v. Chelten Trust Co., 272 Pa. 514, 516; Brubaker v. Lauver, 322 Pa. 461 (1936). In Brubaker v. Lauver, supra, the court stated on page 464 : "The test is, whether the precatory expression was used in a mandatory sense, though couched in a mild, polite, courteous command . . ."

On this same general subject, Hand's Estate, 315 Pa. 238, 244 (1934) is helpful. The will in that case provided: "I request my executor hereinafter named to employ my son, as far as it finds he can be of benefit to my estate."

It was argued that the word "request" was merely precatory, but the court said that in light of past business connections between settlor and his son and all the surrounding circumstances the words were not precatory. "It is uniformly held that words of recommendation, request, wish or expectation addressed to the executor and used in respect to the direct disposition of

testator's property are *prima facie* testamentary and imperative rather than precatory . . . the expression of his wish is deemed to be the expression of his will and the request is equivalent to a command."

In the present case, the request to the trustees was in respect to distribution of testator's property. He made no charitable bequests by his will to the charities named in the letters and twice tells the trustees to act.

Most important, to indicate the imperative mandatory character of settlor's language, is a direct reference to the language itself. Decedent, in his letter of October 23, 1956, used such words as "commitments which"; "I would like to have carried out"; "I would like to have set aside such balance standing to my credit"; "to be dispensed"; "as I would have done had I been making distribution"; "handle this for me"; "I will consider I have placed this money at your disposal for disposition"; "in handling my affairs"; "carry on in my absence"; "acting in this capacity."

In the letter of November 8, 1956, decedent used words such as "make such adjustments and distribution of any balance"; "what I would have done had I been making the distribution myself"; "give you a general sense of direction" "in handling these funds"; "completely distributed within two years after your receipt thereof."

In a reading of these two letters the tone is clear that decedent is using the language of direction, command and instructions, and I find that it is mandatory. Moreover, he tells the trustees to distribute in two years. The time element is clearly and directly expressed and helpful in bearing upon his intent. Decedent tells the trustees to dispense, dispose, distribute, adjust, carry on and expresses appreciation for them acting in this capacity. The entire tone of his letters is mandatory and imperative rather than precatory as to when, why and how. With this displayed as the intention of the

settlor, his manifest intention should not be rendered ineffective merely because he lapsed into occasional polite language.

I conclude, therefore, that by decedent's actions and his letters mentioned above, this decedent demonstrated a charitable intention which was his primary purpose. This paramount purpose is not defeated by the fact that he named members of his family and his estate should they require assistance.

Under A. L. I. Restatement of the Law of Trusts, §398, it states in subsection 2, as follows:

"(2) If the settlor manifested an intention that the whole of the trust property should be applied to charitable objects unless the trustee should choose to apply a part of it to non-charitable objects for which a trust or power cannot validly be created, and his primary purpose was to apply it to the charitable objects, the power to apply the property to the other objects is invalid, and there is a valid charitable trust of the whole of the property."

It is clear beyond doubt that the primary objects of this decedent's bounty were the three charities specifically mentioned, and that the reference to his family and his estate were afterthoughts which do not affect that primary purpose. Both Messrs. Horsey and Cameron testified at the hearing they had no intention of any distribution to either the family or the estate because neither required "assistance."

I conclude, therefore, that a valid, charitable trust was created for the charitable purposes contemplated by the settlor and set forth by him in his letters.

The account is confirmed, and it is hereby directed that Donald P. Horsey and Arthur T. Cameron, trustees, are directed to make distributions in accordance with the settlor's intention set forth in his letters set forth above.

And now, December 28, 1959, this adjudication is confirmed nisi.