Brubaker et al., Appellants, *v.* Lauver et al.

Argued May 12, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

462

W. J. Sanders, for appellants.

Richard Henry Klein, for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, June 26, 1936:

Samuel O. Lauver took out a policy of war risk insurance on his life in the sum of $10,000 on June 6, 1918, naming Mary O. Lauver, his sister, beneficiary. On July 4, 1918, he wrote to her: "Well I have taken out $10,000 insurance made it to you but if anything should happen I want it all divided equal amount them all and the balance of my belongings to, as Milton has that, I wrote to him too, so that they all know." He was killed in France in active service on March 11, 1919. The insurance was awarded to Mary O. Lauver in monthly payments of $57.50 for 240 months. She divided the money among her brothers and sisters for a period of 13 years and 9 months until November, 1932, at which time she stopped and refused to share the proceeds with them. A bill in equity was filed to impress a trust on the insurance policy in favor of the brothers and sisters of the insured. The court below dismissed the bill.

Appellants contend that the excerpt from the letter created a trust in the proceeds of the policy imposing upon the sister the duty of dividing the payments among them and herself. While no particular form of words

or conduct is necessary to create a trust, the declaration of intention to establish one must be definite, clear and explicit, and embody all the essential elements: see *Bair v. Snyder Co. State Bank,* 314 Pa. 85, 89; *Wallace's Estate,* 316 Pa. 148, 151; *Restatement, Trusts,* section 23 and comments. The conduct or language relied upon must impose enforceable duties upon the transferee as distinguished from a mere suggestion or wish that the transferee should use or dispose of the property in a certain manner; and the beneficiary must be definitely ascertainable: *Lawrence v. Godfrey,* 296 Pa. 474; *Smith's Estate,* 144 Pa. 428; *Restatement, Trusts,* sections 25 and 112. Unless the writing in the case at bar embodies all these elements, appellants' attempt to impose a trust must necessarily fail.

The writing does not express a final and definitive intention to create a trust. It is vague, uncertain and ambiguous. While the res may be held to be sufficiently described in the letter, the beneficiaries are not definitely ascertainable. The ambiguous character of the writing and the absence of extrinsic circumstances to clarify the doubt make it impossible to determine decedent's intent. We do not regard the reference in the bill to similar letters being sent to his brothers and sisters as being helpful. Without evidence as to their contents they are of no aid. Decedent may have meant that Mary was to receive the payments for her sole benefit, and in the event anything happened to her a division was to be made among the other brothers and sisters or all his relatives; or the words "if anything should happen" may refer to decedent's death, in which case it is uncertain whether he intended Mary to participate with the others, or merely to distribute the proceeds to them and not for her to share in the division, depending upon the interpretation placed upon the words "among them." To adopt one interpretation in preference to the others would be pure conjecture. "The burden of proving that the real beneficiary [of

464

an insurance policy] is another than the person named rests on the one who asserts it, . . . and the evidence to establish it must be clear, precise, convincing, and satisfactory to the conscience of the chancellor": *Lawrence v. Godfrey, supra.* Appellants failed to meet this burden.

One of the prerequisites to a valid trust is the intent by the settlor to impose enforceable duties on the trustee. Precatory words as to the disposition of property will not create a trust. Expressions of a wish, desire or recommendation that the transferee of property should use or dispose of it in a specified manner will not give rise to a trust; to do so, they must have the force or meaning of a command: see 49 *A. L. R.* 10. The primary question is the intention of the declarant: did he mean to control and govern the conduct of the transferee with respect to the property, or to suggest and recommend the manner in which it should be used or disposed of, leaving its ultimate control and disposition entirely within his discretionary power? The test is, whether the precatory expression was used in a mandatory sense, though couched in a mild, polite, courteous command, or only as suggestion or wish, falling short of binding and compulsory direction: see *Bogert on Trusts,* volume 1, section 48. Words are to be construed according to their natural meaning and not to be given the force of a command where there is nothing to indicate that they were used in that sense. Expressions of desire or expectation are not in themselves sufficient to convert an absolute devise or bequest into a trust, but they imply a discretionary right: *Lindsay's Estate,* 311 Pa. 536; *Chew v. Chew,* 266 Pa. 526; *Pennock's Estate,* 20 Pa. 268. Even words of command have been regarded as precatory where the gift is absolute. Thus, where testator gave his entire estate to his widow, and further provided she "must see and comply with my last requests," which were "she shall pay out" certain gifts to designated charities, it was held

the direction as to the gifts to charity was merely preca-
tory and did not diminish the absolute estate given the
widow: *Herskovitz's Estate (No. 1),* 81 Pa. Superior
379. In *Fisher's Estate,* 268 Pa. 405, the words "Will
and desire . . . that they be obliged to look after the
welfare" were held precatory; and in *Miller v. Stubbs,*
244 Pa. 482, the words "desiring that, she shall use,"
were regarded as precatory.

Appellee was named sole beneficiary notwithstanding
the fact decedent was at perfect liberty to designate
all his brothers and sisters in that capacity or to change
them thereafter. In so doing he manifested an intent
to vest full title to the proceeds of the policy in his sis-
ter, and the burden rests on those claiming adversely
to prove to the contrary. The only words showing an
intent to limit her title are: "I want it all divided."
With the absolute title in Mary, the loose expressions
in the letter amount to no more than an expression of
a wish or desire and must be so construed in the absence
of extrinsic circumstances making it reasonable to sup-
pose that they were used in a mandatory sense. Since
there is nothing to indicate decedent intended his sister
should be under a duty to divide the proceeds, we con-
clude her title was unencumbered by a trust.

Appellants contend that even if the letter was insuf-
ficient to create a trust, the conduct of appellee in di-
viding the proceeds for 13 years and 9 months showed
she interpreted the letter to establish a trust, which
she is now estopped to deny. This argument is based
on a misconception of the settled legal principles gov-
erning the creation of a trust. It is well settled that
the existence of a trust depends solely on the intention
manifested by the settlor: *Restatement, Trusts,* section
23. The conduct of the transferee in treating the prop-
erty as subject to a trust is not evidence of the original
owner's intention and cannot impress a trust upon it,
if in fact there was no trust: *Bair v. Snyder Co. State
Bank, supra,* at p. 89; *Pollock's Estate,* 306 Pa. 301,

313. The division of the proceeds by appellee does not estop the transferee from asserting her legal right nor compel like action by her in the future, otherwise charitable acts, construed as appellants contend, might lead to exceedingly unjust results.

Decree affirmed at appellants' costs.