Tunnell's Estate.

Argued January 6, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Robert Mair,* of *Rambo, Rambo & Mair,* with him *J. Channing Ellery,* for appellants (Nos. 391, 392 and 93 and 94).

*William F. Scheufele* and *Maxwell F. McNally,* for appellants (Nos. 396-398 and 96, 100 and 101).

*Francis Shunk Brown,* for appellees.

OPINION BY MR. JUSTICE LINN, March 22, 1937:

At the audit of the account of the administrator c. t. a. eight persons, decedent's sister, brother, nephews and nieces claimed, as beneficiaries under eight trusts, certain bonds which decedent had caused to be registered in his name as trustee for them respectively. The learned court below held that, in declaring the trusts, his intention was testamentary and that they were revoked by his will. Distribution was ordered accordingly. The five appeals raise the same question. The parties agree on the law but differ about its application. Testator died August 9, 1934, leaving a widow and without issue. His personal property was inventoried at approximately $410,000. The bonds in dispute, about $160,000 par, were included in the inventory.

Appellants claim as beneficiaries of trusts inter vivos, but their proof does not sustain their claims. Tunnell, as owner of the bonds or of the money used to purchase them, was competent to create trusts inter vivos. It cannot be said that the evidence of one transaction is typical of all the rest; for some of them there is more

evidence than for others; some depend on the registration alone. The use of the words trust and trustee are not in themselves sufficient: *Wilbur Trust Co. v. Knadler,* 322 Pa. 17, 185 A. 319. As to some, it was assumed in the court below "that it was the testator's intention to treat all of the bonds in exactly the same manner, and that there probably were other memoranda to explain the other bonds, which have not been found, due no doubt, to the careless manner in which the testator kept his records," the administrator having testified that he found decedent's papers "in a terrible state of disorder."

The burden of proving their equitable title was on claimants. Such a trust "must be created by clear and unambiguous language or conduct, it cannot arise from loose statements admitting possible inferences consistent with other relationships": *Wallace's Estate,* 316 Pa. 148, 151, 174 A. 397; *Brubaker v. Lauver,* 322 Pa. 461, 185 A. 848. It may be, as claimants contend, that Tunnell intended to vest rights in them, but we think the evidence is too uncertain and too indefinite to permit a court to reach that conclusion and that, for want of proof of his intention to hold the bonds as contended, the claims must be dismissed.

The bonds pass under the words "my estate" as used in his will. He left two documents, each written on the back of an envelope, each to the same effect, dated July 1, 1932. They were admitted to probate and are as follows:

"at my Death I want Stephen W Tunnell and Chas R Davis Jr my *nephews* to be my *admrs* and settle my estate according to the Laws of the state of Pena and not to be obliged to give a Bond for there Performace of Duty all other wills Prior to this date made by me Revoked

"July 1 1932            G. A. Tunnell

   "witness            702 So 52 st Phila Pa."

"at my Death I want Stephen W. Tunnell & Chas R Davis Jr my *nepheives* to be my *admrs.* & Settle my es-

tate according to the laws of the State of Pena & not be obliged to give a Bond for there Performace of Duty all other wills Prior to this date made by me Revked
"July 1 1932                         G A Tunnell
  "witness                        702 So 52 st Phila Pa."

Decedent's widow, who lived apart from him, elected to take under the will, and resists the claims of appellants.

It will not be necessary to recite the evidence of all of the transactions.  As to certain bonds of the City of Philadelphia the following appeared:
"The Philadelphia National Bank,
"Loan and Transfer Agent
"City of Philadelphia
"Gentlemen:

"I have constituted myself trustee of City of Philadelphia bonds, registered in my name in trust for ($5000.) Stephen W. Tunnell, nephew and ($5,000.) Charles R. Davis, Jr., nephew.  Will you kindly issue bonds to me as trustee for each of my nephews as stated above.

"It is a condition of the trust that I retain full power to receive the interest and to sell, transfer and assign the bonds at any time to any person—it being your duty to consult no one but me so long as the bonds stand in my name as Trustee).

"It is my right and duty (or the right and duty of my personal representatives in case I am dead), to transfer to such child the bonds held by me in trust for him.
                         "George A. Tunnell, Trustee
"Sworn and subscribed this 28th
day of December 1928
      "Woodward Cook
"Notary Public"

For another transaction, the record is as follows:  On June 2, 1927, he caused $30,000 of 3⅜% United States Treasury bonds of 1943-47 to be registered in his name as trustee for Ella V. Long, a sister.  On the back of an

envelope, found among his papers, and apparently relating to the same bonds, was the following:

"August 1927      Mrs. Ella V Long      Dear Sister
"There is Thirty Thous Dol in gov 3⅜ Reg Bonds 1947 option 43 in my safety Box in the Mkt St Title & Trust Co 52 & Mkt St in The name of George A Tunnell in Trust for Ella V Long at my Death They would become yours

"Yours   G A Tunnell

"(2)  10 000  Each No C 0000 1353 x B 0000 1352 one 5 000⁰⁰ C 0000 15-33
(5)  1000 No K. 000 14310 A 000 311 B 000 14312 x C 000 14313 x D 000 14314."

In another transaction his phraseology differed slightly from that just quoted:

"Mr. Harry Long
"Dear nephew
"There is a one Thous Dol Reg federal Land Bank 4¼% Bond due May 1 1957 option 37 in my safety Box at the 52 & Market St Bank in The name of George A Tunnell in Trust for Harry C Long at my Death & This Bond is still alive it would become yours

"G A Tunnell
"June 1927            702 So 52 st Phila Pa"

Speaking of all the memoranda and letters in the record, the learned auditing judge said that they "refer to bonds of a face value of $83,000 out of a total of $159,000, and that they deal with seven of the eight cestuis que trustents involved, and that in every case but one, they deal with only a portion of the bonds registered in favor of the respective parties."

Some facts were stipulated into the record. All the bonds were found after his death in decedent's safe deposit box to which he alone had access. Claimants called a witness who had been treasurer of a trust company through which some of the registrations were

made. He testified that at various times between 1923 and 1930 Tunnell "would very often stop at my desk and have a conversation with me and ask advice on various things," among them "securities he intended to place in his name in trust"; that "he wished those securities he was purchasing to go to his nephews, nieces and relatives." Asked "When were they to go to these nephews and nieces?" the witness replied "When he passed on—if anything should happen to him. . . . If anything happens to me, I want these bonds to go to my nieces, nephews and relatives. Q. Did you understand that he meant if he died? A. Yes." Another witness, also called on behalf of claimants, testified that he was employed by the Federal Reserve Bank, that he examined the bank's records "for registration of bonds, both Treasury and Land Bank bonds in the name of George A. Tunnell, decedent, in trust for various parties." He testified that under the applicable regulations Tunnell "would have had the right . . . to have had other bonds transferred to any designated person without the consent or joinder of beneficiary named on them." He received all of the income and paid none of it to any of the claimants. While notice was not essential[1] it may be remarked that none of them was notified that decedent had caused the bonds to be registered in trust. The letter to the Philadelphia National Bank quoted above (another like it relates to other bonds) shows that he retained such dominion over the bonds in those trusts that no right vested in the beneficiary. While a trust inter vivos does not fail because a settlor declares that he[2] holds the property in trust, with power to revoke[3] and to receive the income during his life,[4] it is well set-

---

[1] *Merigan v. McGonigle,* 205 Pa. 321, 54 A. 994.

[2] *Smith's Estate,* 144 Pa. 428, 435, 22 A. 916.

[3] *Beirne v. Continental-Equitable Title & Tr. Co.,* 307 Pa. 570, 576, 161 A. 721.

[4] *Henderson v. Hughes,* 320 Pa. 124, 128, 182 A. 392.

tled that[5] "where the settlor declares himself trustee and reserves not only a beneficial life estate and a power to revoke and modify the trust but also power to deal with the property as he likes as long as he lives, the intended trust is testamentary": Section 57(3), Restatement, Trusts; see also comment on Sub-section (3).

Appellants stress *Dickerson's Appeal,* 115 Pa. 198, 8 A. 64, and *Smith's Estate,* 144 Pa. 428, 22 A. 916; in both the intention of the settlors clearly appeared; here it was not shown. As the claimants have not established an equitable title in themselves during decedent's lifetime, the next question is what became of such rights as they had to take at his death? The general rule is that a testamentary trust results "Where the owner of property purports to create a trust inter vivos but no interest passes to the beneficiary before the death of the settlor": Sec. 56, Restatement, Trusts; *Frederick's Appeal,* 52 Pa. 338; see *Wilson v. Anderson,* 186 Pa. 531, 538, 40 A. 1096. A testamentary provision is ambulatory and may be revoked or changed by later testamentary provision. He directed his nephews to "settle my estate according to the Laws of the state," which, in this connection, means the intestate laws; he added "all other wills Prior to this date made by me Revoked." The effect was to revoke the testamentary disposition of the bonds made in the earlier documents: compare *Waltman v. Germantown Trust Co.,* 92 Pa. Superior Ct. 480; *Pozzuto's Estate,* 124 Pa. Superior Ct. 93, 188 A. 209; the bonds became part of his estate to be distributed in accord with the decree made below.

The orders appealed from are affirmed, costs of the appeals to be paid out of the balance on hand for distribution.

---

[5] Except tentative trusts of bank deposits, see *Scanlon's Estate,* 313 Pa. 424, 169 A. 106; *Pozzuto's Estate,* 124 Pa. Superior Ct. 93, 188 A. 209.