## Shober Estate

Before Sinkler, P. J., Klein, Bolger, Ladner and Hunter, JJ.

256

262

*Otto Kraus, Jr.,* for exceptant.

*Bernard J. Myers, Jr., Robert W. Sayre* and *William H. S. Wells* of *Saul, Ewing, Remick & Saul,* contra.

BOLGER, J., April 29, 1949.—The first question involves one of the numerous recurrent vexing problems that plague will interpreters—so recurrent that they can well be termed standard. In making the gift to LeRoy Magee, did testatrix intend "to control and govern the conduct of the transferee with respect to the property, or to suggest and recommend the manner in which it should be used or disposed of, leaving its ultimate control and disposition entirely within his discretionary power? The test is, whether the precatory expression was used in a mandatory sense, though couched in a mild, polite, courteous command, or only as suggestion or wish, falling short of binding and compulsory direction: see Bogert on Trusts, volume I, section 48"; Brubaker et al. v. Lauver et al., 322 Pa. 461, 464.

There is a plethora of cases on both sides of this problem, but the foregoing quotation from Brubaker

et al. v. Lauver et al. presents an entirely different one than is gleaned from other authorities which put the emphasis upon whether the words themselves are precatory. Under the latter test, we would be required to restrict our interpretation to the language of the will, including the disputed phrase as well as all other parts of the instrument without the aid (or hindrance) of evidence aliunde the will. Both tests are supplemented by the rule that we must ascertain the intention only from the language used and not from what the interpreter thinks testator meant to state: Myers Estate, 351 Pa. 472. Extrinsic evidence is allowed only where the language of the will is ambiguous: Keefer Estate, 353 Pa. 281.

However, where words are employed which, standing alone, are clear and definite and need no interpretation, but which must be fitted into and read with other phraseology of the instrument in order to ascertain the sense in which they should be construed, and which when so fitted and read, present a doubt, we have a distinctly different problem, one that authorities do not always characterize as presenting an ambiguity, but where the interpreter must "put himself in the armchair of the testator": Jackson's Estate, 337 Pa. 561; Appeal of Harris, 351 Pa. 368. From that vantage point we then weigh also all attending circumstances, except testator's oral expressions of intention: Nicholson's Estate, 355 Pa. 426.

Here the auditing judge very properly adopted that device. His adjudication recites the attending circumstances which he correctly held supported the conclusion that testatrix intended the gift to Magee to be burdened with the charge of the payments to testatrix's cousin. Other factors buttress the conclusion of the auditing judge. Testatrix, in directing the interment of her remains, uses a precatory phrase, "Upon

death I wish to be buried . . ." The fact that specific sums are involved in the payments to Alice D. Sellers, varying with her being employed or unemployed, is significant. Also, Magee himself testified that testatrix remitted $50 a month to Alice Sellers for a number of years prior to testatrix's death. Exceptant argues that the will does not indicate that the sums so to be paid were to be "made from the previous absolute bequests." This complaint overlooks the only interpretation that can be given to the phrase, "in so doing", which undoubtedly links the two expressions, making the second derivative from the first. Whether or not there is a period or other mark of punctuation preceding this phrase is unimportant because punctuation is not regarded as a serious incident in will construction: Tarter's Estate, 291 Pa. 458.

Many of the cases cited by exceptant are very strong, almost to the point of being persuasive, and as the auditing judge states, the case is an exceedingly close one. However, in most of the cases on the other side, the original bequest is to the wife or other close relation of testator, wherefore we can well understand why the strong language involved in the secondary phrase, was held precatory, as in Herskovitz's Estate (No. 1), 81 Pa. Superior Ct. 379: "and above all my lawful wedded wife must see and comply with my last request, which is as follows: . . ." Hardly any other conclusion could support these decisions. Of course, we have no such element attaching to the primary gift here. On the contrary, the secondary gift is to the closest surviving kin of testatrix and the object of her warm solicitude during the later years of her life, and therefore must be regarded as substantial evidence of testatrix's intent, tending to swing the scales in favor of the auditing judge's interpretation. We sustain the conclusion that the words, while precatory in form,

are mandatory in the sense in which testatrix used them.

The second question involves the status of the money contained in the envelope marked, "This belongs to LeRoy Magee, 4818 Spruce Street, Apt. 1-4, 8-15-47", and discovered in testatrix's safe deposit box at her death. Exceptant emphasizes that his claim is based upon ownership, not upon its being a gift. He points to the great weight to be given to testatrix's declaration against interest contained in the writing in addition to the other supporting evidence. However, he had a heavy burden, as the auditing judge rules, to prove his ownership. The property being found in testatrix's possession, it is presumed to be hers: May Estate, 63 D. & C. 634. A review of the testimony discloses that the weight of the declaration on the envelope in claimant's favor is more than counterbalanced by the admissions, weaknesses and contradictions in claimant's testimony. He presented no evidence of any specific sum, stating that he did not know and had no means of knowing how much testatrix had belonging to him and he then stated that he might have received more from her than he gave her. Claimant's testimony is clearly lacking in the requisite definiteness and precision: Kenna's Estate, 348 Pa. 214. His many admissions along with the other testimony were for the fact-finding auditing judge: Frank's Estate, 339 Pa. 499, and other cases cited in paragraph 12(a) Orphans' Court, Hunter's Orphans' Court Commonplace Book. The auditing judge having found against the claim, we have before us what is tantamount to the verdict of a jury, which we are powerless to disturb except for clear error: Roberts' Estate, 350 Pa. 65. We can find no such error present.

The exceptions are dismissed and the adjudication confirmed absolutely.