Wright Estate.

Argued November 12, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR- NOLD, JJ.

*William J. Blank,* for appellant.

*Harris C. Arnold,* with him *Arnold, Bricker &
Beyer,* for appellees.

OPINION BY MR. JUSTICE BELL, January 4, 1955:

Andrew B. Wright died testate August 6, 1952 leaving a will dated January 21, 1948, the material part of which reads as follows: "This is my will: I want my two sisters Mrs. John Graeff and Mrs. Bess Gulbrandsen each to have ($3000) three thousand dollars. My nieces and nephews to each have two hundred dollars ($200) and after all my debts have been paid the rest to be divided between my ~~three~~ Two sisters. . . ."

When the testator made his will on January 21, 1948 he had three sisters living. At his death he had two sisters living, and the child of a deceased sister.

The Register, following the principle laid down in *Rockett Will,* 348 Pa. 445, 35 A. 2d 303, found that the word "three" was cancelled and the word "Two" was inserted by testator after the will was executed and after the death of one of testator's three sisters. He then probated the will as if it read, "The rest to be divided between my sisters", thus validating the cancellation of "three" but rejecting as invalid the insertion of the word "Two".

What was the testator's actual intention and how can this be ascertained? In *Britt Estate,* 369 Pa. 450, 87 A. 2d 243, we said (pages 454, 455): "The pole star in the construction of every will is the testator's intent: Woelpper's Appeal, 126 Pa. 562, 17 A. 870; Mulert Estate, 360 Pa. 356, 61 A. 2d 841; Byrne's Estate, 320 Pa. 513, 181 A. 500. . . ."

In order to assist us in discovering testator's intention, as expressed in the four corners of his will, we may place ourselves in the testator's armchair and consider the circumstances by which he was surrounded at the time he made his alleged cancellation and interpolation: *Kehr Will,* 373 Pa. 473, 95 A. 2d 647; *Britt Estate,* 369 Pa., supra; *Jackson's Estate,* 337 Pa. 561, 12 A. 2d 338; *Clark Estate,* 359 Pa. 411, 59 A. 2d 109.

"In determining the testator's intention—if no uncertainty or ambiguity exists—his meaning must be ascertained from the language of his will; it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, *but what is the meaning of his words*: Conner's Estate, 346 Pa. 271, 29 A. 2d 514; Ludwick's Estate, 269 Pa. 365, 112 A. 543. . . .": *Britt Estate,* 369 Pa., supra, page 455.

The Register properly found (and the Court below agreed) that the cancellation of the word "three" and the insertion of the word "Two" was made by testator after he had drawn his will, and after the death of one of his sisters. If *thereafter* testator had executed his will at the end thereof, as the law requires, there would be no question as to its validity or his meaning. Unfortunately for the two surviving sisters, testator failed to do so, and therefore the insertion of the word "Two" was invalid: Wills Act, April 24, 1947, P. L. 89, §2, 20 PS 180.2; *Williams Estate,* 336 Pa. 235, 9 A. 2d 377. However, the deletion or cancellation of the word "three" was valid, since a cancellation does not have to be signed by testator nor is any special form of cancellation required: Section 5 of the Wills Act of 1947, supra; *Evan's Appeal,* 58 Pa. 238, 246.

The will therefore read as if it had been written "the rest to be divided between my sisters."

Section 14(8) of the Wills Act of 1947, supra, 180.14, provides that "In the absence of a contrary intent appearing [in the will], a devise or bequest to . . . a sister . . . whether designated by name or as one of a class shall not lapse if the beneficiary shall fail to survive the testator and shall leave issue surviving the testator but shall pass to such surviving issue . . ."

Do the circumstances of striking out the word "three" and inserting the word "Two" suffice to show a contrary intention, or expressing it another way, do they show an intention on the part of the testator to limit the gift to his *two* sisters?

The contention of the surviving sisters that his *actual* intent was to leave the residuary estate to them is plausible but on analysis specious and without merit. In effect, they admit that the insertion of the word "Two" is invalid for the purpose of making a testamentary bequest to the two sisters, but contend it is sufficient to disclose the testator's actual intent and therefore disclose he did not intend the residue to go to his three sisters. The same argument or theory could be advanced if an illegal revocation were made of a testamentary bequest (See *Williams Estate,* 336 Pa. 235, 9 A. 2d 377; Cf. *Hildebrand Will,* 365 Pa. 551, 76 A. 2d 102), or if a gift to a charity within thirty days of death were made in lieu of a gift to a son. In each such case the illegal revocation or invalid substitutionary gift could not affect or operate (to show an actual intent) to defeat a prior valid bequest. This same argument was made in *Jull Estate,* 370 Pa. 434, 88 A. 2d 753, where it was unsuccessfully argued that an invalid exercise of a power of appointment showed an intention that the testator did not wish the property invalidly appointed to pass to the residuary legatee, since he had already specifically, although ineffectively, said he wished it to go elsewhere.

110

We therefore hold (a) that this testator directed the rest of his property "to be divided between my sisters"; (b) that the extrinsic evidence is not sufficient to alter, limit or defeat that language; and finally, (c) that "my sisters" meant his two surviving sisters and, by virtue of Section 14(8) of the Wills Act of 1947, supra, the surviving daughter of testator's deceased sister.

The order and decree of the Orphans' Court is reversed, and the case is remanded for such further order and decree as may be proper and just, consistent with this Opinion. Each party shall pay her respective costs.