Corbett Estate.

Argued January 15, 1968.  Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John R. Suria,* with him *Saul, Ewing, Remick & Saul,* for appellants.

*Leonard Turner,* with him *Dallett Hemphill,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, May 3, 1968:

This is an appeal from a decree of the Orphans' Court of Chester County. The testator, Reverend Dennis A. Corbett, died September 7, 1956 leaving a holographic will dated December 22, 1925. Two small pecuniary bequests were followed by the presently contested residuary clause: "All the remainder of my estate, of whatever nature, I give and bequeath to my two sisters, Catherine Corbett, and Julia Corbett, and to my brother, John Corbett—two parts to each of said sisters, and one part to said brother—*who are instructed as to my charitable wishes."* (Emphasis supplied.) At the time this will was executed testator's two sisters and brother named in the residuary clause were living. Another brother, Patrick J. Corbett, had died exactly one year before the date of execution.

All of the specified beneficiaries predeceased the testator, the last of the three having passed away in 1948. Catherine and Julia Corbett died unmarried and without issue; John Corbett was survived by James Corbett, his adopted son,[1] the appellee. Patrick J. Corbett, the one brother not mentioned in the residuary clause, was survived by two daughters, Mae K. Corbett and Margaret P. Suria, the appellants. The sole issue presented by this appeal is the proper distribution of the residue of decedent's estate. The auditing judge

---

[1] The fact that appellee is an adopted child is of no consequence in this litigation. See Act of April 24, 1947, P. L. 80, §8, 20 P.S. §1.8; Act of April 24, 1947, P. L. 89, §14, as amended by the Act of February 17, 1956, P. L. (1955) 1070, §1, 20 P.S. §180.14(6) (Supp. 1966).

awarded the entire residue to James Corbett. However, the appellants insist that an intestacy should have been declared and that they are therefore each entitled to one-third of decedent's residual property with the remaining third given to appellee.

Appellants advance, albeit somewhat tentatively, the suggestion that the phrase "who are instructed as to my charitable wishes" evidences an intention of testator to create a testamentary trust. If such is the case, they argue, the property bequeathed in the residuary clause must pass by intestacy because the trust is incapable of effectuation. We hold, however, that the quoted phrase does not create a trust and, in fact, is not even indicative of an intent to create one.

We begin with the proposition that the word "wish" (or, in this case, "wishes") is generally classified as precatory. *Calder's Estate,* 343 Pa. 30, 21 A. 2d 907 (1941). However, such a word may be mandatory when expressive of an intention of the testator to be carried out without the intervention of another's will and when used "in direct reference to the estate." Id. at 37, 21 A. 2d at 911.[2] *Stinson's Estate (No. 1),* 232 Pa. 218, 221, 81 Atl. 207, 208 (1911), perhaps the leading case in this area, enunciates this rule: "*[W]hen precatory words are used merely for the purpose of advising or influencing, or as expressive of a wish or desire that the legatee . . . make a certain use of the testator's bounty, they are not obligatory upon*

---

[2] The *Calder* Court noted that this rule often runs contra to the principle that, where there is an absolute gift, later words in the same instrument will not operate to reduce the estate already bequeathed unless it is reasonably certain that such was the intention of the testator. It is clear that, were it not for the words "who are instructed as to my charitable wishes," the gift to the residuary legatees is absolute. Under many of the cases cited in *Calder* the quoted language would thus be deemed not to reduce the estate previously given.

*those to whom they are addressed*; but when used to express his manifest intention to control or direct, they are mandatory, and will be so construed in saying what effect is to be given to them: [Citations omitted] . . ."

· · That the phrase employed in Rev. Corbett's residuary clause falls within the italicized *Stinson* language and is thus completely precatory is amply illustrated by *Herskovitz's Estate No. 1,* 81 Pa. Superior Ct. 379 (1923). After leaving his estate to his wife, Dr. Herskovitz directed that she "must . . . comply with my last requests, which is [sic] as follows: . . ." Then followed a series of pecuniary gifts to various charities. Testator, in an attempt to insure that his requests were honored, added: "I hereby hope, wish and demand that every point of my last will shall be wholly fulfilled by my lawful wedded wife to a T." The Superior Court held that the quoted directions and demands were precatory and not sufficient to create a charitable trust. Certainly, if Dr. Herskovitz's directions were precatory, then the considerably milder comment that Rev. Corbett's legatees were "instructed as to . . . [his] charitable wishes" must be.[3]

This conclusion is reinforced by our belief that testator's direction was legally insufficient to create a trust.[4] A trust, charitable or otherwise, cannot be created unless the purported settlor manifests an intention to impose enforceable duties. Restatement 2d,

---

[3] At least one court has suggested that the case law shows a tendency to construe provisions in a will as precatory when such a construction will operate to the benefit of a close family relation. See *Shober Estate*, 67 Pa. D. & C. 251 (O.C. Philadelphia Cty. 1949). Assuming that this observation is valid, then our predilection should favor a decision that testator's instructions were precatory since the residuary legatees were his closest family.

[4] As to the requirements for the creation of a trust, see generally *Brubaker v. Lauver*, 322 Pa. 461, 185 Atl. 848 (1936).

Trusts, §§25 and 351 (1959). Illustration 1, appended to §25 of the Restatement, is apt: "A bequeaths $10,-000 to B 'desiring that he should use it for such purposes as he might think the testator would deem wise.' In the absence of other evidence [and there is no other here], B is entitled beneficially to the money and does not take it in trust." See also comment b, §25; comment c, §351.

We next turn to appellants' second contention—the phrase "who are instructed as to my charitable wishes" demonstrates that testator intended that only the three named legatees should take under the residuary clause and that, since none survived testator, an intestacy results. Both parties cite a myriad of guides to the construction of wills: a layman's will is to be construed as if written by a layman, *Ziegler Estate,* 356 Pa. 93, 51 A. 2d 608 (1947); each word of a will is to be, if possible, given effect, *England Estate,* 414 Pa. 115, 200 A. 2d 897 (1964); rules of construction are not employed unless the will is ambiguous or testator's intent uncertain, *Houston Estate,* 414 Pa. 579, 201 A. 2d 592 (1964); all, of course, are cited as an aid to the ultimate determination, i.e., what intent is manifested by the language employed.[5]

Section 14 of the Wills Act of 1947, Act of April 24, 1947, P. L. 89, 20 P.S. §180.14(8) and (10), provides: "In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules: . . . (8) Lapsed and void devises and legacies.—Sub-

---

[5] Appellant relies heavily upon the rule of construction that the law leans toward equality among heirs. See *Ziegler Estate,* supra. The court below and appellee counter this rule with another: the presumption that a testator wished to die testate. See *Grier Estate,* 403 Pa. 517, 170 A. 2d 545 (1961). These rules, tending to produce opposite conclusions in the same case, seem to be of little aid here.

60

stitution of issue. A devise or bequest . . . to . . . [testator's] brother or sister . . . shall not lapse if the beneficiary shall fail to survive the testator and shall leave issue surviving the testator but shall pass to such surviving issue. . . . (10) Lapsed and void devises and legacies.—Shares in residue. When a devise or bequest . . . shall be included in a residuary clause of the will and shall not be available to the issue of the devisee or legatee under the provisions of clause (8) hereof, . . . it shall pass to the other residuary devisees or legatees, if any there be, in proportion to their respective shares or interests in the residue."

Both parties agree, and well they should, that, absent the phrase "who are instructed as to my charitable wishes", appellee would unquestionably be entitled to the entire residue. See *Slater Estate,* 377 Pa. 285, 105 A. 2d 59 (1954); *Morgan's Estate,* 340 Pa. 465, 17| A. 2d 454 (1941); *Cooperman Estate,* 13 Fiduciary¹ Rptr. 133 (O.C. Philadelphia Cty. 1963); *Estate of Troxell,* 20 Lehigh L.J. 398 (O.C. 1944); *Denny's Estate,* 22 Pa. D. & C. 175 (O.C. Philadelphia Cty. 1934) (STEARNE, J.). By the operation of subsection (8) the bequests to the two sisters lapsed for they died without issue; the bequest to John Corbett, however, does not lapse since he was survived by issue, the appellee. Since the lapsed bequests to testator's sisters were contained in a residuary clause, subsection (10) dictates that appellee, whose father's bequest did not lapse, is entitled to the entire residue. Appellants' contention thus reduces to the proposition that the phrase "who are instructed as to my charitable wishes" is a sufficient manifestation of a "contrary intent" on the part of testator to prevent the operation of the antilapse provisions of §14. We do not agree.

The question of what language is sufficient to show an intent that the anti-lapse statute should not be applied is one that has been the subject of relatively frequent litigation. See Annot., Testator's Intention as Defeating Operation of Antilapse Statute, 63 A.L.R. 2d 1172 (1959). The general rule, as developed primarily in California, appears to be that the intention of the testator to render the statute inoperative must be plainly indicated.[6] This intention need not manifest itself by a specific provision in the will dealing expressly with the question of lapse, for testator's intention can be deduced by implication from other aspects of the will. Thus, in other jurisdictions some cases hold that testator's desire to disinherit an individual or a clause expressing an intention to exclude from participation persons not mentioned in the will is sufficient to indicate that the anti-lapse provisions should not be applied to the putative beneficiaries of the statute. See id. at 1181-90. Since Rev. Corbett included no *express* provision as to lapse, appellants must rest on the theory that the phrase in question *impliedly* requires that the anti-lapse statute not apply.

To the extent that the problem of an implied intention to prevent the application of the anti-lapse provisions has been considered, Pennsylvania cases *seem* to hold that the statute is rendered inoperative only when testator specifically provided for disposition of lapsed bequests.[7] See *Estate of Robert Hammond,* 103 Superior Ct. 503, 157 Atl. 17 (1931); *Ireland Estate,* 12 Pa. D. & C. 2d 689 (O.C. Chester Cty. 1957);

---

[6] Some states place the burden of proof upon the individual seeking to show the nonoperation of the antilapse statute, while others merely state that the testator is presumed to have known of the statute and its effect.

[7] We do not here intimate that only an express provision in the will covering a possible lapse will be sufficient to show testator's contrary intent.

*Gray Estate*, 8 Pa. D. & C. 2d 593 (O.C. Philadelphia Cty. 1957); *Shellenberger Estate*, 7 Fiduciary Rptr. 434 (O.C. Montgomery Cty. 1957). While we do not. here decide what words, estate plan or other circumstance would be sufficient to exclude by implication the operation of the anti-lapse statute, we are convinced that *Wright Estate*, 380 Pa. 106, 110 A. 2d 198 (1955) compels a conclusion that Rev. Corbett's manifestation of intent was not sufficient.

At the time his will was executed, Wright had three living sisters. Accordingly, he left the residue of his estate "to be divided between [sic] my three sisters." One of these sisters died; Wright thereupon crossed out the word "three" in his will and substituted next to it the word "two." We held that this interlineation could not be probated but that there was a partial cancellation of the will so that the residuary clause in legal effect now read: "the rest to be divided between my sisters." Wright was survived by his two sisters and the daughter of the predeceased sister. Under §14, the gift to the predeceased sister did not lapse but rather passed to her surviving daughter. It was contended, however, that the interlineation at least demonstrated that Wright intended that only his two surviving sisters should share in the residue and that, therefore, he manifested an intent that the anti-lapse provisions not apply. We rejected this contention and held that an invalid bequest could not operate to show an actual intent.

Wright's interlineation indicating that only his surviving sisters should benefit was thus deemed insufficient.[8] We thus fail to see how Rev. Corbett's clearly

---

[8] The reverse, but analogous, situation is presented by *McFerren Estate*, 365 Pa. 490, 76 A. 2d 759 (1950). We there held that the mere fact that the testatrix made specific provision that certain legacies (otherwise saved by the statute) would lapse did not dem-

less substantial manifestation of intent, i.e., "who are instructed as to my charitable wishes," can be held sufficient.

The decree of the Orphans' Court of Chester County is affirmed. Each party to pay own costs.

Mr. Chief Justice BELL dissents.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

The majority opinion reaches a result by applying artificial rules of construction which, in my view, directly contravenes the obvious intention of the deceased.

In *Ziegler Estate*, 356 Pa. 93, 51 A. 2d 608 (1947), we said that in construing a layman's will, the language must be considered without reference to technical rules of construction. Obviously, the purpose of employing the phrase "who are instructed as to my charitable wishes" was sufficient to indicate that testator intended that at least part of the residue of his estate should be used for charitable purposes. It is also clear that the only persons advised and instructed as to these charitable wishes were those beneficiaries named in the will, all of whom predeceased the testator. Nevertheless, in the guise of the rule concerning precatory language, and the application of the anti-lapse statute, the majority opinion permits someone who was not informed or instructed as to testator's charitable desires to be the recipient *under the will* of the entire residue of his estate.

While I agree with the majority that testator's use of precatory words was legally insufficient to create a trust or impose any enforceable duties, I cannot

---

onstrate an intent that legacies not covered by the statute would not lapse. We there said that it would be conjecture to assume that by providing for lapse in some bequests, testatrix therefore intended that other bequests should not lapse.

agree that such language does not indicate an actual intention of the testator to transfer the residue of his estate to only those persons apprised of his charitable wishes. Appellee certainly does not possess the knowledge of how much and to whom part or all of the residue the testator intended to give to particular charitable institutions. Testator's actual intent under the will being frustrated and incapable of fulfillment due to the death of all the named beneficiaries, the residue of his estate should not pass under the will, but should be distributed as if testator died intestate.

Moreover, in apparent disregard to what I think is the clear intention of the testator, the majority seeks to buttress its resolution by resorting to §14 of the Wills Act of April 24, 1947, P. L. 89, 20 P.S. §§180.-14(8) (10) which provides in pertinent part as follows: "In the *absence of a contrary intent appearing therein,* (referring to the will) wills shall be construed as to real and personal estate in accordance with the following rules: . . . (8) Lapsed and void devises and legacies.—Substitution of issue. A devise or bequest . . . to . . . [testator's] brother or sister . . . shall not lapse if the beneficiary shall fail to survive the testator and shall leave issue surviving the testator but shall pass to such surviving issue. . . . (10) Lapsed and void devises and legacies.—Shares in residue. When a devise or bequest . . . shall be included in a residuary clause of the will and shall not be available to the issue of the devisee or legatee under the provisions of clause (8) hereof, . . . it shall pass to the other residuary devisees or legatees, if any there be, in proportion to their respective shares or interests in the residue." (Emphasis supplied.)

The majority determines that the phrase "who are instructed as to my charitable wishes" is not a sufficient manifestation of a contrary intent to prevent the

operation of the anti-lapse statute. I disagree for the reasons previously stated. It is inconceivable that the testator intended that the residue of his estate should pass to the surviving issue of the named beneficiaries in the will, since the surviving issue could not in any way fulfill testator's charitable intentions being completely unaware of those wishes.

In my opinion, the words "who are instructed as to my charitable wishes" are a sufficient expression of a contrary intent rendering inoperative the anti-lapse provision under the Wills Act of 1947. The majority in concluding otherwise, relies almost exclusively upon *Wright Estate*, 380 Pa. 106, 110 A. 2d 198 (1955), which case I find inapplicable to the present situation. In *Wright*, we held that an illegal revocation or invalid substitutionary gift could not affect or operate to show an actual intent to defeat a prior valid bequest, nor could it be used to show a contrary intent that the anti-lapse statute should not apply. However, the *Wright* case can be distinguished from the instant case in several respects. First, the anti-lapse statute by its terms did not apply in *Wright*, since it could not be successfully argued that the word inserted ("two") evidenced a contrary intent *appearing in the will*. Since the insertion was deemed an invalid substitutionary gift, the will had to be read as if testator provided "the rest to be divided between my sisters." Consequently, no expression of a contrary intent actually appeared in the will. Here the words "who are instructed as to my charitable wishes" were not invalidly inserted in the will, but rather were merely incapable of enforcement. Although unenforceable, the words quite properly appear in the will and should be used, unlike in *Wright*, for the purpose of ascertaining testator's intent. Secondly, in *Wright* we only proscribed the *use* of an invalid bequest to demonstrate a contrary intent and not

66

as the majority suggests that the invalid bequest failed to sufficiently manifest the necessary contrary intent. Here no such situation exists. Appellants are not offering an invalid bequest or devise so as to affect or operate to defeat a prior valid disposition of testator's property, but on the contrary offer an expression of intent appearing in the will which for reasons other than its invalidity cannot be enforced. Morever, our Court in *Wright* was faced with a very practical problem due to the fact that if we were to have held that the invalid insertion could be used to indicate a contrary intent we would have simply arrived at the same result as if we allowed the invalid substitutionary gift to be an effective disposition of Wright's property. This practical problem also fails to exist in the instant case.

For these reasons I am firmly convinced that we should use this expression to resolve the crux of the issue before us, namely, the actual and obvious intent of the testator. Since the avowed purposes of the residuary clause cannot possibly be effectuated *under the will,* I would distribute the proceeds of this estate in accordance with the rules of intestate succession.

I dissent.