## Kehler Estate

*Carl Rice* and *Charles H. Weidner,* for petitioner.
*Sanford S. Marateck* and *Frank J. Konopka,* for respondent.

RANCK, *J.,* January 16, 1978—We have been petitioned to construe a will and declare the rights therein of one Ethel Kehler Chupp. Following ar-

gument, we decided that her claim may be raised by the present action for declaratory judgment (Kehler Estate, 49 Northumb. L.J. 129, 1 D. & C. 3d 132 (1977)), and the problem now at bar is the merit of her petition.

It appears from the averments of the petition and answer that Emerson I. Kehler died testate on April 25, 1975. Testator made and executed his last will on February 14, 1963. The first and second paragraphs of the will make outright pecuniary bequests in equal sums to Emerson Asher Shoemaker and Larry Welker, testator's nephews, conditioned upon the legatees surviving testator. The residue of the estate was equally divided among Ralph Kehler, Viola Welker, Ada Shartel, and Gertrude Krafp, all of whom were testator's siblings, "and to the survivor or survivors of them." Ralph Kehler predeceased testator. Ralph Kehler's wife had previously died in 1963, which left petitioner the sole surviving heir of Ralph Kehler at testator's death.

Testator's three sisters declined to serve as his personal representatives, and, after executing a renunciation, they requested the register of wills to appoint Lawrence E. Welker, a nephew and legatee of the testator, as administrator c.t.a. Letters of administration c.t.a. were issued to the said Lawrence E. Welker who proceeded to pay all debts, file the appropriate tax returns and otherwise administer the estate. On April 9, 1976, the first and final account and schedule of proposed distribution were filed. The account proposed distribution to Viola Welker, Ada Shartel and Gertrude Krafp, who has in the interim died, but made no mention of petitioner, who thereupon sought the declaratory relief at issue.

Essentially, the problem is whether the words,

"to the survivor or survivors of them," found in the residuary clause of testator's will entitle petitioner to a one-quarter share of the residue that otherwise would have passed to her father, Ralph Kehler. And, if so, does petitioner have a right superior to Lawrence E. Welker to be named administratrix of the estate? Resolution of the first question is largely a matter of will construction and interpretation. As an aid to such construction, respondent at hearing on this matter sought to introduce direct evidence of testator's intent in the form of testimony by the scrivener. We deferred ruling on petitioner's objection but now conclude that no determination is necessary, since the issues presented may be answered by an examination within the four corners of the will and a review of the surrounding circumstances.[1]

It is fundamental that the object in the construction of any will is to discern the intent of the testator: Wright Estate, 380 Pa. 106, 110 A. 2d 198 (1955). Such intent is gleaned from an analysis of the language used, the general plan of distribution, the circumstances surrounding testator at the time of drafting, and the existing facts: Carter Estate, 435 Pa. 492, 496-97, 257 A. 2d 843 (1969). " " "[C]anons of construction [should] be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain." " " Banes Estate, 452 Pa. 388, 392, 305 A. 2d 723 (1973). Maintaining that a class gift was intended, petitioner asserts that the words "to the

---

1. Consequently, we make no use of the scrivener's testimony proffered by respondent, particularly in view of its questionable admissibility: Estate of Kelly, 473 Pa. 48, 373 A. 2d 744, 747-78 (1977).

survivor or survivors of them" reasonably refer to those named individuals who survived testator *and* to the issue or representatives of the named persons who predeceased testator. It is argued that this interpretation is bolstered by the equality of treatment shown in the will and the precept that wills are to be construed so as to avoid intestacy. In effect, petitioner argues that the ambiguous nature of the words in question requires resort to the rules of interpretation and the antilapse statute found therein. Respondent counters that use of the antilapse statute would be incorrect as testator's contrary intent is perfectly apparent from the choice of words employed.

The Pennsylvania antilapse statute recites, in part:

*"In the absence of a contrary intent appearing therein,* wills shall be construed as to real and personal estate in accordance with the following rules:
" . . .

"(9) A devise or bequest to . . . the testator['s] . . . brother or sister . . . whether designated by name or as one of a class shall not lapse if the beneficiary shall fail to survive the testator and shall leave issue surviving the testator but shall pass to such surviving issue who shall take per stirpes the share which their deceased ancestor would have taken had he survived the testator." Act of June 30, 1972, P.L. 508, sec. 2, 20 Pa.C.S.A. §2514(9). (Emphasis supplied.)

Technically, then, resolution of the issue at bar hinges on whether testator in his will displayed sufficient contrary intent to negate operation of the statute. The cases are not very helpful on this point. In Corbett Estate, 430 Pa. 54, 241 A. 2d 524 (1968),

the court held that a clause in a will passing the residue of the estate to two sisters and a brother and including the language "who are instructed as to my charitable wishes" did not illustrate "a sufficient manifestation of a 'contrary intent'" to defeat operation of the statute: 430 Pa. 54 at 60. Of course, that language is quite unlike and considerably less definite than the words with which we wrestle. Adopting the general rule, the court did venture that the intention "to render the statute inoperative must be plainly indicated," although such intention "can be deduced by implication from other aspects of the will."[2] 430 Pa. 54 at 61. See Annotation, Testator's intention as defeating operation of antilapse statute, 63 A.L.R. 2d 1172 (1959).

The court, on this point of implied intention, stated:

"To the extent that the problem of an implied intention to prevent the application of the anti-lapse provisions has been considered, Pennsylvania cases *seem* to hold that the statute is ren-

2. The court in Corbett did not enunciate "what words, estate plan or other circumstances would be sufficient to exclude by implication the operation of the anti-lapse statute. . . ." 430 Pa. 54 at 62. The opinion, however, was grounded on Wright Estate, 380 Pa. 106, 110 A. 2d 198 (1955), which held that an invalid bequest, resulting from a failure to reexecute the will after an interlineation, could not operate to show an actual intent to defeat the antilapse statute. The court concluded that if Wright's improper interlineation was insufficient to show a contrary intent, then surely the indefinite language used by Corbett must fail as well. The facts in Wright are completely unlike those at bar. In Wright it was argued that a bequest invalid for all other purposes should be considered as manifesting an intent contrary to the operation of the statute, whereas here our attention is directed to specific words, proper in all respects, which show, it is argued, an intent to defeat operation of the statute.

dered inoperative only when testator specifically provided for disposition of lapsed bequests." 430 Pa. 54 at 61. (Emphasis in original.)

By footnote, however, the court strongly qualified this analysis of the cited cases with the statement: "We do not here intimate that only an express provision in the will covering a possible lapse will be sufficient to show testator's contrary intent." 430 Pa. 54 at 61, n. 7. The Pennsylvania Supreme Court in Corbett, however, was not dealing with words of survivorship. Where the issue, as here, is the effect of words of survivorship, the weight of authority holds that testator intended to negate the antilapse statute. See Annotation, antilapse act—testator's intention, 63 A.L.R. 2d 1172, 1186 (1959), and cases collected therein; Annotation, Wills—who are survivors of class, 54 A.L.R. 3d 280, 300 (1974), and cases collected therein; 4 Bowe-Parker: Page on Wills 544, §35.18 (1961).

This point of majority position, however, is more of passing interest than substantive aid, for the diversity of language used by the many antilapse statutes and variations in factual situations in the cases makes distillation of, or ready resort to, any absolute rule quite difficult: 54 A.L.R. 3d 280 at 300. The general approach, therefore, has been to proceed on an ad hoc basis, which seems to renew the maxim that "'no will has a brother,' hence, in construing a will precedents are of little value." Bumm's Estate, 306 Pa. 269, 272, 159 Atl. 15 (1932); Fetter Estate, 152 Pa. Superior Ct. 10, 13, 30 A. 2d 647 (1943). Consequently, we reject determination of the issue before us by the mechanical application of a "majority rule" and shall instead examine the words used and the surrounding circumstances to ascertain "the meaning of what

testator said." McFerren Estate, 365 Pa. 490, 497, 76 A. 2d 759 (1950).

We agree with petitioner that testator's residuary gift to his brother and sisters "and to the survivor or survivors of them" manifested an intent of group-mindedness as seen in the "allowance of the possibility of fluctuation in the number of ultimate recipients." Estate of Clarke, 460 Pa. 41, 46, 331 A. 2d 408 (1975). Even though the beneficiaries were named, we find that the intent was to make a class gift: Billing's Estate (No. 1), 268 Pa. 67, 70, 110 Atl. 767 (1920). We believe, however, that petitioner treats too lightly the words testator chose to employ. Literally, a survivor is "[o]ne who survives another;" "one of two or more persons who lives after the death of the other or others," Black's Law Dictionary 1615 (4th ed. 1968); "the longest liver of two or more persons." 3 Bouvier's Law Dictionary 3212 (8th ed. 1914). These definitions have been followed in the cases both in this jurisdiction and elsewhere: In re Barr's Estate[3], 2 Pa. (Barr) 428, 45 A.D. 608 (1846); Converse v. Byars, 112 Mont. 372, 118 P. 2d 144 (1941); Waugh v. Poiron, 315 Ill. App. 78, 42 N.E. 2d 138 (1942); In re Estate of Gallop, 248 So. 2d 686, 54 A.L.R. 3d 275 (Fla. App., 1971), cert. dismissed 257 So. 2d 259 (Fla.).

---

3. In Barr's Estate, testator directed that the residue of his estate be equally divided among his brothers and sisters, or their "survivors." Some of testator's siblings had predeceased him before the will was drafted, and testator was aware that those who had predeceased him had left families. Under these circumstances, the court reasoned that testator intended the term "survivor" to apply to the family of any predeceased named legatee. In the present case, we can find no factual circumstances outside the will, such as in Barr, which indicate the intent of Emerson I. Kehler.

We find from a reading of the testamentary instrument in question that testator did intend to use the word "survivor" in its literal sense. Considering, as we must, every word and sentence used in the will (Turbett v. Turbett, 3 Yeates, 187 (1801); Fletcher v. Hoblitzell, 209 Pa. 337, 343, 58 Atl. 672 (1904)), we note that the two pecuniary bequests preceding the residuary provision both use the language: "should he survive me, but if he predeceases me, then this paragraph of my Will shall be null and void and of no effect." Although not specifically making use of the word "survivor," this phraseology clearly expresses and utilizes the concept of survivorship; that is, the legatee would take if and only if he outlived or survived another; here, the testator. Having employed the notion of survivorship in its precise and literal sense in the first and second paragraphs of his will, we believe that testator intended the same meaning in the third paragraph when he chose words which literally express the same theme.

Citing the Restatement, petitioner argues that the term "survivor" can have other than its literal meaning: Restatement Property, §271, Comment d, at 1396 (1940). The cited language reads: "Variations in the language or circumstances *of the limitation* can cause the word 'survivors' to be construed either (1) literally, or (2) as equivalent to 'others,' or (3) as equivalent to 'stirpital survivors.'" (Emphasis supplied.)

Petitioner fails to note, however, that this section and commentary refers to the situation where a devise is made subject to an executory limitation: Restatement, supra. Since there is no executory limitation in the residuary clause under consideration, we believe this authority somewhat inappo-

site.[4] Undoubtedly, it is true, however, that a given testamentary author could intend the word "survivor" to refer to the issue of a named legatee. Unfortunately for petitioner, we can discover no such intent here. To the contrary, testator's use of the word "survive" and his obvious understanding of the survivorship concept in the first and second provisions of the will clearly shows that the phrase "and to the survivor or survivors of them" was intended to exclude those and their representatives who did not outlive testator, and thus defeat operation of the antilapse statute. There are no factual circumstances which would lead us to believe that "testator was not consistent in the use of the same or equivalent words in one document." Shoemaker's Estate, 2 Lebanon 291, 296 (1950); Handy's Estate, 314 Pa. 61, 63, 170 Atl. 277 (1934).

Petitioner maintains that her position is supported by the equal treatment given the four named residuary legatees; a goal which she asserts would be lost under respondent's theory, since those who predeceased testator would lose in spirit as well as fact if they could not be represented by their issue. There is no doubt that testator intended equal treatment of the residuary legatees, but we believe it just as clear that this equality was to be applied only to those named who outlived him, as evidenced by the ubiquitous application of the sur-

---

4. The Restatement provides an example of a devise subject to an executory limitation containing the concept of survivorship: A effects a devise of the residue of his estate "'to my wife B for life, and then in equal shares to my four sons C, D, E, and F and their heirs, but should any one of them die without issue then his portion shall go to the survivors of the said four sons and their heirs.'" Restatement, Property, §271, Illustration 1, at 1394-95 (1940).

vivorship theme. Petitioner further contends that respondent's approach raises the possibility of an intestacy, since all of the residuary legatees were of an advanced age. It is presumed that a testator wishes to die testate: Grier Estate, 403 Pa. 517, 170 A. 2d 545 (1961). However, our interpretation would work no intestacy, and we believe that this rule of construction is designed to avoid an intestacy in fact, not a hypothetical possibility. See Carmany Estate, 357 Pa. 296, 299, 53 A. 2d 731, 174 A.L.R. 311 (1947) ("a will must be construed *to avoid an intestacy*"). (Emphasis supplied.) We do not believe it would be reasonable to interpret this will on the basis of the remote possibility that all four named legatees *could have* predeceased testator.

Lastly, petitioner in her brief asserts that since the phrase "to the survivor or survivors of them" is not inconsistent with an intent to benefit stirpital survivors; and because it must be presumed that testator was aware of the antilapse section of the Wills Act, 20 Pa. C.S.A. §2514(9), "he therefore might well have had in mind issue of any deceased beneficiary" when he used the term "survivor." This argument, however, ranges beyond the scope of our inquiry. In expounding a will, testator's intent "is not to be arrived at by . . . subjective deductions as to what the testator might have meant," but, rather, "the inquiry is limited to the meaning of what the testator said." Britt Estate, 369 Pa. 450, 455, 87 A. 2d 243 (1952); McFerren Estate, supra. We conclude from an analysis of the specific words in question, and the will as a whole, that the meaning of testator's words is that only those named beneficiaries who survived or outlived him would take, and that the bequest and devise to those

named beneficiaries who predeceased testator would lapse.

We believe this intent of testator to render the antilapse statute inoperative was plainly indicated by the specific words employed and their similarity to prior provisions of the will which express an intent of survivorship, and we so hold: Corbett Estate, 430 Pa. 54 at 61; Shoemaker's Estate, 2 Lebanon 291 at 299-300. Having determined that petitioner is not entitled to a one-quarter share of the residuary estate, and since it appears of record that those who are so entitled have renounced their executory duties in favor of the present administrator c.t.a., we hold that Ethel Kehler Chupp does not have a right superior to Lawrence E. Welker to serve as administratrix: Act of June 30, 1972, P.L. 508, sec. 2, 20 Pa.C.S.A. §3155(b)(1) and (6).

Accordingly we enter the following

## DECREE

And now, January 16, 1978, after due consideration of the written and oral arguments of counsel, it is adjudged and decreed that Ethel Kehler Chupp is not entitled to a one-quarter share of the residuary estate of Emerson I. Kehler, and that said Ethel Kehler Chupp has no right superior to Lawrence E. Welker to serve as administratrix.