Dorothy E. J. Fox et al. v. Viola M. Schaeffer as
Trustee and Individually.

Maltbie, C. J., Brown, Jennings, Ells and Dickenson, Js.

Argued October 5—decided December 21, 1944.

*Frederick C. Hesselmeyer*, for the appellant (defendant).

*Daniel D. Morgan*, for the appellees (plaintiffs).

MALTBIE, C. J.  In this action, brought to enforce certain trusts, the trial court rendered judgment that each of the four plaintiffs should recover of the named defendant individually and as trustee damages in a certain amount, and she has appealed.  The plaintiffs are the grandchildren of Fred E. Jenks, children of his son Leslie.  The defendant is a daughter of Fred E. Jenks.  The plaintiffs' contention, as stated in the complaint, was that during his lifetime he established for each of them a savings bank account; that, after his death in 1929, these accounts stood in the name of the defendant as trustee under an oral trust; that by the terms of this trust each of them became entitled to the money on reaching the age of twenty-one; and that the defendant withdrew the money and invested it in certain shares of corporate stock which were taken

and still stand in her individual name. They sought in the complaint the removal of the defendant as trustee and the appointment of a new trustee, that the funds be paid to them and that the defendant be enjoined from transferring the stock. The defendant admits that she became trustee of the savings bank accounts and that she withdrew the money and invested it, with other money belonging to herself and her husband, in corporate stocks which were taken and still remain in her individual name. Her principal contentions are that, under the terms of the trust as imposed upon her by her father, the plaintiffs are not now entitled to receive the funds, and that the court erred in rendering judgment for money damages and in fixing the amount of that judgment.

The defendant filed a draft finding containing almost two hundred paragraphs made up for the most part of statements arranged in the order in which they appear in the transcript of testimony. The result is a rather disorderly series of brief statements which include many that are irrelevant to any issue of law in the case, constitute unnecessary detail or are merely evidential. Probably because of this the trial court made a very brief finding which does not present an adequate background for an understanding of the case. Plaintiffs, in their brief, state, however, that they are willing to have some sixty paragraphs of the draft finding added to the finding, and by piecing together the statements in the finding and in these paragraphs a sufficient basis for considering the claims of error can be obtained.

The finding contains, among the subordinate facts, no statement of the instructions Fred E. Jenks gave, in accordance with which the defendant was to hold the accounts and dispose of income and principal. The first so-called conclusion of the court is that, in

accordance with the terms of the trust, the funds were to be paid to the plaintiffs when they reached "an understanding age." While stated among the conclusions, this amounts to the finding of a primary fact, that the terms of the trust specified that the plaintiffs were entitled to receive the money when they arrived at that age. As such the statement is open to attack upon the basis of the evidence before the court. *Aetna Ins. Co.* v. *Blumenthal,* 129 Conn. 545, 550, 29 Atl. (2d) 751. The defendant contends that this is not a correct statement of the terms of the trust. The situation is rather unusual in that the defendant was the only person who testified as to the instructions given to her by her father with reference to her duties as trustee, and her evidence was largely educed by questions as to testimony she had given in the trial of another action where the existence and amount of these trusts were in issue. Her statements of the terms of the trust were far from clear and, as given at different times, not entirely harmonious; and it is notable that in the final summing up of them by plaintiffs' counsel, to which she assented, there was no provision as to the ultimate distribution of the fund should she not, in the exercise of her judgment, have used it as an emergency fund for the plaintiffs, although she did state that there was no "trust of obligation," that is, one which made it obligatory upon her to use the fund for or deliver it to them. It was peculiarly necessary in these circumstances for the court to determine how far it would believe her testimony. *Leitzes* v. *F. L. Caulkins Auto Co.,* 123 Conn. 459, 461, 196 Atl. 145. While the testimony which supports the finding is scant and far from clear, we cannot hold that it is not sufficient.

The next conclusion of the court was that each of the plaintiffs had reached an understanding age on or prior to December 17, 1930. Previous to December 23,

1927, the savings bank accounts had stood in the names of the children respectively, with Fred E. Jenks as trustee. On or about that date, the name of the defendant was added, so that they stood thereafter in the names of the children with Fred E. Jenks or the defendant as trustee. It was at this time, according to the defendant, the only witness to the matter, that Fred E. Jenks gave her instructions as to the terms of the trust. The plaintiffs had then respectively reached the following ages: a little over twenty-four, about eighteen, a little less than sixteen and a little less than fourteen. On three days in December, 1930, the last of which was December 17, the plaintiff purchased the shares of corporate stock in which the funds from these accounts were invested. The trial court concluded that, at least by this last day, they had reached an understanding age. On that day the children were respectively about twenty-seven, twenty-one, nineteen and seventeen years of age.

When, on or about December 23, 1927, Fred E. Jenks instructed the defendant that the plaintiffs were not to receive the money until they had reached an understanding age, he could not have meant by that phrase the age of twenty-one years, which from time immemorial the law has regarded as the age at which persons attain a sufficient understanding to be fully answerable for their acts, because at that time one of the plaintiffs was well over that age. "To understand" means to have full and clear knowledge of, to have thorough comprehension of, to comprehend. *Chaney* v. *Baker*, 304 Ill. 362, 370, 136 N. E. 804. In its ordinary use it almost necessarily implies a subject matter to be comprehended, and "understanding" when used in such a connotation as the one before us usually has only a relative meaning. "The word 'understand,' so much used by lawyers and jurists in connection with

the execution of deeds, wills and such instruments, includes the realization of the practical effects and consequences in every direction of the proposed act, be it deed or will." *Pitney, V. C.,* in *White* v. *White,* 60 N. J. Eq. 104, 115, 45 Atl. 767; see also *Miller* v. *Folsom,* 49 Okla. 74, 81, 149 Pac. 1185. We say that a testator, in order to be competent to make a will, must have "mind and memory sound enough to enable him to know and understand the business upon which he is engaged"; *Atchison* v. *Lewis,* 131 Conn. 218, 219, 38 Atl. (2d) 673; and by that we mean that he must comprehend "the nature and condition of his property, who are or should be the natural objects of his bounty, and his relations to them, the manner in which he wishes to distribute his estate among, or withhold it from them, and the scope and bearing of the will he is making." *Kimberly's Appeal,* 68 Conn. 428, 439, 36 Atl. 847. Indeed, unless the expression "of an understanding age" can be related to some definite object or purpose in the mind of Fred E. Jenks, there would be serious question whether the trust is one which would be sufficiently definite and certain to be given effect. *Union & New Haven Trust Co.* v. *Koletsky,* 117 Conn. 334, 338, 167 Atl. 803; *Ommanney* v. *Butcher,* 1 Turn. & Russ. 260, 273, 37 Eng. Rep. R. 1098; *Brubaker* v. *Lauver,* 322 Pa. 461, 463, 185 Atl. 848; *Lefrooth* v. *Prentice,* 202 Cal. 215, 227, 259 Pac. 947; 3 Pomeroy, Eq. Jur. (4th Ed.), § 1009.

A proper determination of the meaning of the words requires a careful scrutiny of the surrounding circumstances to ascertain whether Fred E. Jenks had in mind some matters to which these words related; for example, a proper use of the money, or the relationship between the plaintiffs' parents, between whom, the evidence indicated, there had been marital disagreements which had caused him deep concern. As the

record stands, it does not disclose the basis for the court's decision that on December 17, 1930, the plaintiffs had reached "an understanding age," none is apparent to us and we are not able to sustain its conclusion to that effect. *Hoyt* v. *Stamford*, 116 Conn. 402, 406, 165 Atl. 357.

As this conclusion requires that the case be remanded, we need to refer to other claims of error only in so far as may be helpful in further proceedings. It hardly seems reasonable that Fred E. Jenks gave no further instructions to the defendant as to the accounts than that she was to turn them over to the plaintiffs when they should reach an understanding age; on another trial, it might be found that he gave her further directions; these might definitely determine certain claims of the parties which otherwise it might be helpful to consider now; and these claims we disregard. We do say this: The prayer for relief in the substitute complaint asking that the trust funds be paid to the plaintiffs in conformity to the judgment of the court is sufficient basis for a judgment for the plaintiffs to recover money damages. The trial court, in its conclusions in the finding, held that each of the plaintiffs was entitled to recover the amount of the principal of the fund due him or her with interest at 6 per cent from December 17, 1930; but in the judgment the interest is directed to be determined at the rate of 4 per cent compounded annually from that date to July 8, 1942, and at 6 per cent from the latter date to the date of judgment, upon the total of the principal of the fund and the interest so computed. The theory upon which the trial court decided the case was that on December 17, 1930, the plaintiffs were entitled to receive the principal of the fund. This would not present a case of damages based on the misuse of trust funds or even the wrongful conduct of the defendant

in investing them in her own name. See *State ex rel. Raskin* v. *Schachat,* 120 Conn. 337, 343, 180 Atl. 502; *Chapter House Circle* v. *Hartford National Bank & Trust Co.,* 121 Conn. 558, 576, 186 Atl. 543. Interest would be allowable because of the wrongful withholding from the plaintiffs after that day of money which they were entitled to receive. In such a situation interest would ordinarily be computed at the rate of 6 per cent from the time the money was due; *Wight* v. *Lee,* 101 Conn. 401, 404, 126 Atl. 218. There are circumstances under which compound interest may properly be charged, as, for example, where the trustee has been guilty of a wilful wrong or has been grossly negligent, or where, during the period he withheld the money, he has used it to acquire personal gains. 4 Bogert, Trusts & Trustees, § 863; 2 Scott, Trusts, p. 1110; Restatement, 1 Trusts, § 207. But, whatever the proper rate of interest in this case, there was no basis for computing it by the method stated in the judgment.

This case arose out of testimony given by the defendant in an action which she brought against her husband after they had been divorced, and in which by cross-complaint he sought an adjudication of their rights in certain property. In the former action the court found the amount of the money held by the present defendant in trust and invested by her in the shares of corporate stock, and directed that an accounting be taken to determine the respective rights of the parties in property held by them, after deducting from that held by the defendant in this action a sufficient amount to make good the trusts the plaintiffs now claim. An appeal was taken to this court and, because many additions and corrections were sought in the finding, the evidence was printed in the appeal record. In the instant case, the plaintiffs

called the defendant as their witness, and in the course of the direct examination their counsel asked the privilege of cross-examining her as a hostile witness. Granting counsel such a privilege rests in the discretion of the trial court and can be ground of appeal only if that discretion has been abused. *State* v. *Stevens,* 65 Conn. 93, 98, 31 Atl. 496; *State* v.` Gargano,* 99 Conn. 103, 113, 121 Atl. 657. We note this matter because defendant's counsel seems to have assumed that the ruling of the court necessarily involved an attack on the credit of the witness, but that of course is not so. The purpose of cross-examining a hostile witness is to have the advantage of more searching methods of examination, by leading questions and the like, and by that means to enable a party to elicit information which otherwise might not be forthcoming. 3 Wigmore, Evidence (3d Ed.), § 915.

At the close of the testimony, counsel for the plaintiffs asked the trial court to take judicial notice of the entire record in the previous case as it was printed for the appeal to this court, including, as it did, copies of papers in the file of the Superior Court and the transcript of the evidence. The trial court ruled that it would take judicial notice of the judgment fixing the amount of the trust fund; and it admitted the transcript of evidence for the purpose of showing statements made at another time and place inconsistent with the testimony the defendant had given in the case at bar. That the trial court made use of the judgment file in the other case in determining the amount of damages in this case is evident from the fact that the judgment before us adopts the method of determining interest included in the earlier one for the period up to the taking of the accounting there ordered. The only parties to the earlier actions were the defendant

and her husband. In order that a judgment in one case shall be res adjudicata in another, not only the issues, but the parties, personally or by representation, must be the same. Any adjudication of the amount of these trust funds in the earlier case was in no way binding in this case, and the trial court had no right to regard the earlier judgment in determining the rights between the parties to this action. *Whipple* v. *Fardig*, 109 Conn. 460, 463, 146 Atl. 847; *Hartford National Bank & Trust Co.* v. *Malcolm-Smith*, 129 Conn. 67, 70, 26 Atl. (2d) 234. The right of a court to take judicial notice of a judgment appearing in the file of another case in the same court does not mean that it can give weight to the conclusions embodied in that judgment in deciding the issues in another action involving different parties. *German* v. *German*, 125 Conn. 84, 89, 3 Atl. (2d) 849.

The court admitted in evidence the entire transcript of testimony in the earlier case. That transcript contained not only testimony of many witnesses other than the defendant but also much testimony by her entirely irrelevant to any issue in this case. A trial court may, in the proper exercise of its discretion, admit a voluminous mass of documentary material where it would be extremely difficult to separate the relevant from the irrelevant, or in like circumstances; *State* v. *Hayes*, 127 Conn. 543, 599, 18 Atl. (2d) 895; but it should do so only in cases where peculiar facts justify its action. The introduction of an indiscriminate mass of material leaves opposing counsel in a position where they cannot know what particular evidence is claimed to be relevant, and so deprives them of a fair opportunity to make objection; and it may not be possible to determine what evidence the court considered in reaching its decision. In such a situation as the one before us, a trial court should require the plaintiffs to

offer such excerpts from the testimony in the earlier trial as they claim to be relevant and material. The record does not disclose upon what ground the testimony was claimed to be admissible. Where a party finds it necessary to call his adversary as a witness, as was the situation here, he may well be at a serious disadvantage and if the testimony is at variance with that given by the witness on another occasion the rule against impeaching the credit of one's own witness does not preclude the court, in its discretion, from admitting the latter, that, out of a comparison of the two, it may be able to find where the truth lies. *Carney* v. *Hennessey*, 77 Conn. 577, 586, 60 Atl. 129; Wigmore, op. cit., § 916; see also *Wells* v. *Lavitt*, 115 Conn. 117, 119, 160 Atl. 617; *Schmeltz* v. *Tracy*, 119 Conn. 492, 498, 177 Atl. 520. Testimony given by the defendant at the earlier trial might also have been received in evidence, if contrary to her interest, as admissions. *Hill* v. *Small*, 129 Conn. 604, 30 Atl. (2d) 387.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.