[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] ORDER RE COUNSEL FEES AND INTEREST CT Page 8559
On February 4, 2000, this court issued an order granting portions of the plaintiffs motion for contempt or to compel in this post-dissolution proceeding. The court deferred the issues of an award of interest or counsel fees. After receiving evidence and briefing on those issues from the parties, the court now awards interest and counsel fees to the plaintiff as set forth below.
 I Interest
The plaintiff seeks an award of interest under general statutes §37-3a for the defendant's failure to pay $150,000 under paragraph 1 a of the parties' property settlement that the court adopted at the time of the dissolution of their marriage on April 5, 1990.[1] The plaintiff seeks interest from June 30, 1995, the deadline for paying this sum that the defendant agreed to in 1991.
Paragraph 1 a of the property settlement provided, in relevant part, that the defendant would pay the plaintiff $150,000 upon sale of the marital home and that the plaintiff would reside in those premises until it was sold. For reasons recounted more fully in this court's Memorandum of Decision on the motion for contempt or to compel, ten months later the parties agreed, to their mutual satisfaction and benefit, to modify that agreement. Under the written 1991 modification agreement, the defendant prepaid $103,000 of his obligation under paragraph 1 e of the dissolution judgment requiring him to pay the plaintiff the sum of $250,000 over 13 years. Using that sum to purchase a condominium, the plaintiff then moved out of the marital home and the defendant moved back in.
As part of their modification of the original divorce agreement, the defendant also promised to pay the plaintiff the $150,000 due to her under paragraph 1 a no later than June 30, 1995. As a result of this modification, the $150,000 was no longer due at some contingent date in the future, when the marital home was sold, but by the specific date of June 30, 1995. The defendant signed a written agreement on February 7, 1991, and a promissory note on February 21, 1991, both to that effect.
In so modifying their property settlement with regard to who would live in the marital home and when the $150,000 was due, the parties breached a cardinal rule of Connecticut dissolution law, under § 46b-81b of the general statutes, that a property settlement adopted by the court and incorporated into the terms of a judgment dissolving a marriage is non-modifiable. Bunche v. Bunche, 180 Conn. 285, 287-288, 429 A.2d 874
CT Page 8560 (1980). The parties did so again, two years later, when the plaintiff acceded on June 18, 1993, to the defendant's request that she reduce her $150,000 mortgage on the marital home to $75,000 and "accept $75,000 in full satisfaction of the $150,000 note." (Defendant's Exhibit 10.) By the time of the trial of this matter in late 1999, the defendant had not paid the plaintiff anything towards fulfilling his obligations arising under paragraph 1 a of the property settlement originally adopted by the court at the time of the dissolution or as modified by either the 1991 or 1993 agreements. In determining the legal significance of the defendant's failure to pay, the court was required to assess the effect of the 1991 and 1993 agreements in order to answer two questions: How much did the defendant owe the plaintiff? When was that sum due?
In its Memorandum of Decision, the court found that the 1993 modification was unenforceable.[2] Unlike that 1993 agreement, however, the earlier 1991 agreement benefitted [benefited] both parties, did not have any disparate financial advantage to either party, and did not significantly affect the amounts of money the defendant would receive from the plaintiff but instead only the timing of payments. The court thus found that the 1991 agreement, which obliged the defendant to pay the $150,000 due under paragraph 1 a by June 30, 1995, was binding and enforceable on both parties. The question the court must now consider is whether to award interest from that date.
Under § 37-3a, a court may award interest for the detention of money after it becomes payable. As the plaintiff correctly notes, an award of interest under § 37-3a merely requires a finding of a "wrongful" detention of funds and not any venal or sinister purpose in failing to pay sums due. The defendant argues that an award of interest is inappropriate since this court found credible his testimony that he believed that the plaintiff had relinquished her right to more than $75,000. The court did not base its failure to hold the defendant in contempt based on a finding of good faith, however. The court found certain of the defendant's statements as to why he had not paid the plaintiff anything due under paragraph 1 a by June 30, 1995, to be credible and others not so.[3] The court declined a contempt holding on the failure to pay primarily because the 1991 agreement setting June 30, 1995, as the due date for payment of the $150,000 was not itself a court order; hence, the defendant's failure to pay the $150,000 by that date did not violate the specific terms of a court order.[4]
Applying the statutory criterion under § 37-3a, the court finds that the defendant's failure to pay the plaintiff $150,000 by June 30, 1995, was "wrongful." That is so under either of two criteria. First, the 1991 agreement obliged the defendant to pay that amount by then. Second, he failed to pay the $150,000 in a reasonable time.[5] As the defendant CT Page 8561 points out, none of the agreements obligated the defendant to pay interest on the $150,000; thus no interest was due on the $150,000 as long as the defendant paid it in accord with his obligations under the dissolution agreement or the parties' later 1991 modification. His wrongful failure to pay that sum when due on June 30, 1995, however, invokes the statutory provision of interest after the date of wrongful detention. Accordingly, the court awards interest on the $150,000 at the rate of ten per cent per year from June 30, 1995. Although the plaintiff requests compound interest, the court does not believe that to be appropriate here, for the same reasons it declined to find him in contempt. The defendant's conduct, though wrongful, was not maliciously or intentionally so. Fox v. Schaeffer, 131 Conn. 439, 446, 41 A.2d 46 (1944).
 II Counsel Fees
The plaintiff also seeks an award of counsel fees in the amount of $22,930.95 for the legal fees of Attorney Steven Levy, $7,327.20 for the legal fees of the plaintiffs prior attorney in this matter, Susan F. Jordan, and legal expenses of $610.53. These amounts total $30,868.68. This court has previously decided that it has authority to award counsel fees in this matter. Under general statutes § 46b-62, the court may award counsel fees to enforce or modify the judgment of dissolution, by considering the parties' "respective financial abilities" and the factors set forth in § 46b-82.[6] Furthermore, the promissory note signed by the defendant on February 21, 1991, specifically agreed to pay "all reasonable costs of collection of this note."
In deciding whether to award counsel fees, the court must, in considering the statutory factors, take into account the financial abilities of the parties. To that end, both parties have submitted financial affidavits and offered testimony. Although the defendant represents that his financial situation, after reflecting the court's orders here, would be roughly comparable to that of the defendant, the court simply does not believe all of the defendant's testimony regarding his financial situation. The court has had the opportunity to observe the defendant and hear his testimony during the trial of the underlying motion and these post-hearing matters. The defendant has shown himself very capable of recalling many details of his financial transactions when those details serve his interest. In the hearing on counsel fees and interest, however, he was unable to recall certain information regarding his current assets that might have aided the plaintiffs legal posture here. Furthermore, he acknowledged that his business pays for certain of his expenses, such as the leases on the new vehicles he and his wife drive and his country club fees; yet he did not include such amounts as imputed income in his financial affidavit. Thus, the court finds that it CT Page 8562 cannot obtain an accurate and complete picture of the defendant's true financial situation. Despite that inability, however, the court can conclude from the evidence that, even after making all the payments required by these orders, the defendant will still be in a superior financial position to the plaintiff. Based on all the evidence the court heard and the submissions by the parties, the court finds that the following orders are fair and equitable in this case.
The court also finds that failure to award counsel fees here would substantially undermine the court's other financial orders. Eslami v. Eslami, 218 Conn. 801, 820, 591 A.2d 411 (1991). The factual issues were complex, involving not just the initial dissolution judgment but two written post-judgment modification agreements. The legal issues, although not novel or complicated, were likely beyond the capacity of most lay people to present adequately to the court. The defendant's belief that he did not owe the sums sought by the plaintiff virtually required the plaintiff to seek judicial relief to vindicate her claim; that fact, together with the cluster of legal and factual issues, made it necessary for the plaintiff to obtain counsel to pursue her claims successfully. Furthermore, requiring the plaintiff to pay her own counsel fees would effectively cause her to invade the funds to which she was entitled under the court's previous financial orders or to expend a portion of the very funds she claimed here in order to vindicate the court's prior orders and those issued in conjunction with the present proceedings.
The court has reviewed the affidavits of activities and hours expended by both counsel who represented the plaintiff in this matter. The court finds that the amount of time spent by counsel, the hourly rates charged, and the fees charged are, except as discussed below, reasonable for the complexity of the issues and the number of court proceedings involved here.
Number of hours: The affidavits of plaintiffs two attorneys show a total of 152.17 hours spent in this matter through May 3, 2000, 60.45 hours by Attorney Jordan's office and 91.8 by Attorney Levy's. of this amount, 113.25 hours was spent in pretrial proceedings and the balance for trial and post-trial matters. The court agrees with the defendant that there is some overlap and duplication (at least 15 hours that the court can identify from the affidavits) by virtue of the plaintiffs decision to change attorneys, a right that is hers but whose exercise this court does not believe should financially burden the defendant. The court notes that the work of the first attorney did not involve any evidentiary hearings going to the merits of the plaintiffs claims. Furthermore, even 98 1/4 hours (after subtracting the 15 hours of obvious duplication) seems excessive for the pretrial stages of this proceeding, which involved a total of six court-appearances. The court therefore CT Page 8563 believes an additional one-third reduction in the number of pretrial hours claimed is warranted.
Hourly Rate: The court finds that the hourly rate charged by Attorney Jordan of $150 per hour, discounted to $121.21 per hour, is fair and reasonable for her services. The affidavit of Attorney Level states that he charged an hourly rate of $250 per hour, in part because the "trial was originally scheduled almost immediately after [he] was retained." The plaintiffs decision to switch counsel shortly before a scheduled trial, while also surely her right, is another factor that this court does not believe should be the defendant's financial responsibility. The court believes a rate of $175 per hour, in view of the legal and factual complexities of this matter, is fair and reasonable for Attorney Levy's services.
Despite the factors that the court believes warrant some reduction in the counsel fee claims made by plaintiff, the fact remains that this litigation was necessary in order to enforce plaintiffs rights. Accordingly, after taking into account all the criteria discussed herein and enumerated in §§ 46b-62 and 46b-82, the court awards counsel fees to the plaintiff in the amount of $16,730.
The defendant should pay interest, counsel fees, and all amounts previously awarded by the court to the plaintiff no later than ninety days from the date this decision becomes effective.
BY THE COURT
 ________________________ Stephen F. Frazzini