******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The defendant appealed to this court from the judgment of the trial court granting the plaintiff's application for an order of civil protection. The court held an evidentiary hearing on the application, during which the plaintiff testified. The defendant did not testify and was not present at the hearing but was represented by counsel, Z. The court found that the defendant's position was less credible because he did not appear at the hearing. The court also took judicial notice of a summary process complaint filed against the defendant by a housing authority and concluded that the allegations of serious nuisance in the complaint buttressed the credibility of the plaintiff because the allegations were similar to the plaintiff's. The housing authority had withdrawn the summary process action prior to the evidentiary hearing. *Held*:

1. The trial court erred when it, sua sponte, took judicial notice of the contents of the summary process complaint against the defendant without giving him notice and an opportunity to be heard: although Z attempted to be heard at the evidentiary hearing on the court's decision to take judicial notice of the summary process complaint, the court did not give Z an opportunity to voice her concern with its decision, and, at the conclusion of the hearing, Z attempted to make the court aware that the summary process action had been withdrawn; moreover, the court failed to inquire into the basis for the housing authority's allegations or why it withdrew the action; furthermore, the court's error was compounded by its statements that the allegations of the summary process complaint buttressed the plaintiff's credibility.

2. The trial court erred by finding the defendant less credible because he did not appear at the hearing: the court took into account the defendant's conduct, namely, his failure to appear, which was not evidence, to help it decide a substantive issue; moreover, because the defendant, who was represented by counsel, did not testify at the hearing, there was no finding to be made as to his credibility.

3. The trial court's errors resulted in harm to the defendant and, accordingly, it abused its discretion in issuing an order of civil protection: the court's decision to take judicial notice of the contents of the summary process complaint harmed the defendant because the court improperly relied on the unproven allegations of that complaint when it made its factual findings with respect to the plaintiff's credibility; moreover, in finding that the defendant's position was less credible because of his absence at the hearing, the court weighed the defendant's credibility against that of the plaintiff when there was no basis for it to do so; furthermore, the court's decision to issue the civil protection order turned on its determination that the plaintiff was credible and its determination that the defendant's absence hurt his credibility, which undermined this court's confidence in the court's fact-finding process and warranted reversal of its decision because the court's factual findings served as a significant part of the basis for the court's decision to issue the order of civil protection.

Argued February 2—officially released May 17, 2022

*Procedural History*

Application for a civil protection order, brought to the Superior Court in the judicial district of Litchfield, where the court, *J. Moore, J.*, granted the application and issued an order of protection, from which the defendant appealed to this court. *Reversed; judgment directed.*

*Sally R. Zanger*, for the appellant (defendant).

*Opinion*

LAVINE, J. The defendant, M. S., appeals from the judgment of the trial court granting an application for a civil protection order filed by the plaintiff, W. K.[1] On appeal, the defendant claims that the court erred (1) when it, sua sponte, took judicial notice of the contents of a summary process complaint against him without giving him notice and an opportunity to be heard, (2) by finding the defendant less credible because he did not appear at the hearing, (3) when it, sua sponte, took judicial notice of and relied on a previous application for a protective order filed by the defendant against the plaintiff without giving the defendant notice and an opportunity to be heard, and (4) by finding sufficient evidence to grant the application for the order of civil protection. We agree with the defendant's first and second claims and, accordingly, reverse the judgment of the court and remand this case with direction to vacate the order of civil protection. Because we conclude that the court committed reversible error with regard to those claims, we need not address the remaining claims.

The following procedural history is relevant to this appeal. The parties are neighbors and have lived in adjoining apartment units in Torrington since July, 2020. Both parties have called the police to report various disputes between them, and the police have instructed the parties to stay away from one another. Additionally, the plaintiff reported to the police dangerous actions that the defendant allegedly had taken against other neighbors.

On January 5, 2021, the plaintiff, pursuant to General Statutes § 46b-16a, filed an application for an order of civil protection against the defendant and obtained an ex parte order of civil protection against the defendant.[2] In his application, the plaintiff made the following allegations. The defendant had: "vandalized [the plaintiff's] apartment"; "made false accusations to the police trying to get [the plaintiff] arrested"; "[thrown] a rock, causing [the plaintiff] injury"; "thrown feces at [the plaintiff's] window"; "smashed [the plaintiff's] window"; "poisoned [the plaintiff's] garden with ammonia or urine, not sure which"; "[drawn] swastikas outside of [the plaintiff's] door"; "given [the plaintiff] the Nazi salute"; and made anti-Semitic remarks directed at the plaintiff. The plaintiff also alleged that, "[a]fter a failed [frivolous] attempt to get a restraining order against [the plaintiff], [the defendant] punched [the plaintiff's] car and left a note admitting to it." On a separate occasion, he alleged, a witness saw the defendant "[put six] M-90 explosives under [the plaintiff's car] . . . ."[3] The plaintiff further alleged: "There is a 911 call in which [the defendant can be heard] threatening [the plaintiff] and behaving violently . . . ." Additionally, the plaintiff stated that the defendant "is being evicted" and that the Housing Authority of the City of Torrington (housing authority)

"has records of times and dates of the dozens of incidents." On January 13, 2021, the defendant filed an objection to the ex parte civil protection order.

The court held an evidentiary hearing on the plaintiff's application for a protective order on January 29, 2021. The plaintiff testified about the allegations in his application and did not offer any exhibits. The defendant did not testify and was not present at the hearing.[4] The defendant's attorney, Sally Zanger, called Officer Joseph DeGoursey of the Torrington Police Department as a witness to testify about police reports prepared by the department. The defendant, through Zanger, offered into evidence four police reports detailing incidents between the plaintiff and the defendant, as well as the defendant's alleged conduct toward others in the neighborhood. The reports were admitted into evidence as full exhibits.

In issuing the order of civil protection, the court stated: "In making its decision, the court . . . notes the following factors. Number one, the court is the ultimate arbiter of credibility in a courtside case. The court can also take judicial notice of its own files, both in this case and in other cases.

"That being said, the court finds that [the defendant's] position is much less credible, rendered so by the fact that [the defendant] chose not to appear today. [The defendant's] position is, also, much less credible because the court takes judicial notice of the summary process file in which lawyers, who are bound by the Rules of Professional Conduct, made allegations of serious nuisance, many of the same of which—I'm issuing my ruling, counsel, don't raise your hand—they made many of the same allegations, which buttresses some of the allegations that the [plaintiff] made today.

"The court also finds that a couple of weeks ago there was a reverse civil protective order hearing, in effect, in which [the defendant] was trying to get a protective order against [the plaintiff] and Judge Shaban decided there was not enough evidence there for that."

The court, pursuant to § 46b-16a, issued an order of civil protection against the defendant and stated: "The court has no doubt that this is a neighbor dispute. The court has no doubt that there are mental health issues involved on behalf of the [defendant]. However, the court finds that the [defendant] has thrown a rock at the [plaintiff], the [defendant] has brandished bug spray at the [plaintiff], the [defendant] has brandished a flashlight at the [plaintiff],[5] the [defendant] has made anti-Semitic remarks against the [plaintiff].

"Therefore, the court is going to issue a civil order of protection with the following terms. The [defendant] is to surrender or transfer all firearms and ammunition; the [defendant] is not to assault, threaten, abuse, harass, follow, interfere with or stalk the protected person. I

don't think I can order a stay away because their doors are right next to each other. [F]or the present time, I think that would [be] impossible to enforce." (Footnote added.)

When the court stated that it was taking notice of "the summary process file," it was referring to a summary process complaint filed by the housing authority against the defendant on August 10, 2020. On January 19, 2021, the housing authority withdrew its action against the defendant. Following the court's oral ruling granting the order of protection and as the court was transitioning to its next case, Zanger attempted to inform the court that the summary process action had been withdrawn. The following exchange occurred between Zanger and the court:

"[Zanger]: (Inaudible) matter was withdrawn.

"The Court: Thank you. I didn't hear what she said; did you?

"[The Clerk]: I don't think we wanted to."

The court did not inquire further about Zanger's remarks.

On the day of the hearing, following its oral decision, the court issued a written order stating: "This order shall supplement and clarify the court's remarks from the bench in granting this civil protective order. The court did not find, as independent facts, the allegations of the summary process matter against the [defendant], which has been withdrawn. However, the court found that the allegations of serious nuisance included in that action, which were made by attorneys who are bound by the Rules of Professional Conduct, including rules 3.3 and 4.1, as well as by [§] 10-5 of the . . . Practice Book, buttress the credibility of the [plaintiff] when he testified as to threatening actions taken against him by the [defendant]." This appeal followed. Additional procedural history will be set forth as necessary.

I

The defendant claims that the court erred when it, sua sponte, took judicial notice of the contents of a summary process complaint against him without giving him notice and an opportunity to be heard. We conclude that the court's taking of judicial notice was improper both in form and in substance. We agree that the court should have given the defendant notice and an opportunity to be heard. The more concerning error, however, was the court's *reliance* on the allegations in the summary process complaint in finding the plaintiff credible in the present case. We will address that error further in part III of this opinion.

The following additional procedural history is relevant. The summary process complaint filed by the housing authority contained, among other things, the following allegations: (1) "[O]n or about July 18, 2020, the

defendant lit and threw a fire bomb (M-90s)[6] at the direction of a porch of a biracial couple who live across the street from [the] defendant's unit" (footnote added); (2) "[o]n or about July 16, 2020, the defendant placed three . . . M-90s under another tenant's car"; (3) "[o]n July 20, 2020, the defendant chased a neighboring tenant into [the] tenant's apartment and threatened [the] tenant with a flashlight"; and (4) "[o]n or about July 16, 2020, the defendant threw M-90s out of [the] defendant's unit and almost hit a child across the street from [the] defendant's unit . . . [and] [t]he local police department has been called several times." On January 19, 2021, the housing authority withdrew its action against the defendant. At the January 29, 2021 hearing in the present case, the court, sua sponte, took judicial notice of the complaint. When the court stated that it was doing so, Zanger raised her hand. The court did not permit her to speak.

"A trial court's determination as to whether to take judicial notice is essentially an evidentiary ruling, subject to an abuse of discretion standard of review. . . . In order to establish reversible error, the [defendant] must prove both an abuse of discretion and a harm that resulted from such abuse. . . . In reviewing a trial court's evidentiary ruling, the question is not whether any one of us, had we been sitting as the trial judge, would have exercised our discretion differently . . . . Rather, our inquiry is limited to whether the trial court's ruling was arbitrary or unreasonable." (Internal quotation marks omitted.) *Rogalis, LLC* v. *Vazquez*, 210 Conn. App. 548, 556–57, 270 A.3d 120 (2022).

"The court may take judicial notice without a request of a party to do so. Parties are entitled to receive notice and have an opportunity to be heard for matters susceptible of explanation or contradiction, but not for matters of established fact, the accuracy of which cannot be questioned." Conn. Code Evid. § 2-2 (b).

"Notice to the parties is not always required when a court takes judicial notice. Our own cases have attempted to draw a line between matters susceptible of explanation or contradiction, of which notice should not be taken without giving the affected party an opportunity to be heard . . . and matters of established fact, whose accuracy cannot be questioned, such as court files, which may be judicially noticed without affording a hearing. . . .

"Other authorities have drawn a distinction between 'legislative facts,' those which help determine the content of law and policy, and 'adjudicative facts,' facts concerning the parties and events of a particular case. The former may be judicially noticed without affording the parties an opportunity to be heard, but the latter, at least if central to the case, may not." (Citations omitted.) *Moore* v. *Moore*, 173 Conn. 120, 121–22, 376 A.2d 1085 (1977).

"Court records may be judicially noticed for their existence, content, and legal effect. *State* v. *Gaines*, 257 Conn. 695, 705 n.7, 778 A.2d 919 (2001); *Grant* v. *Commissioner of* [*Correction*], 87 Conn. App. 814, 817, 867 A.2d 145 (2005). 'Judicial notice of a court file or a specific entry in a court file does not establish the truth of any fact stated in that court file.' [Conn. Code Evid.] § 2-1 (c) (commentary); *Fox* v. *Schaeffer*, 131 Conn. 439, 447, 41 A.2d 46 (1994). For example, a court may judicially notice that certain testimony was given in a case, but not that it was true. . . . [S]ee *O'Connor* v. *Laroque*, 302 Conn. 562, 568 n.6, 31 A.3d 1 (2011) . . . ." E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 2.3.4 (d), p. 107.

In the present case, the allegations in the summary process complaint can be characterized as "adjudicative facts." Furthermore, allegations, by their nature, are susceptible to contradiction. The court could have, without giving the defendant notice and an opportunity to be heard, taken judicial notice of the fact that the housing authority brought a summary process action against the defendant. The court also could have taken judicial notice of the content of the summary process complaint. The court went a step further, however, by stating that the housing authority made many of the same allegations against the defendant in its summary process complaint, and that those allegations "buttress[ed]" the plaintiff's credibility. The court's statements indicate that it relied in part on the adjudicative facts contained in the summary process complaint to help it make factual findings with respect to the plaintiff's allegations in the present case.

The hearing transcript indicates that Zanger attempted to be heard on the court's decision to take judicial notice of the summary process complaint.[7] First, immediately after the court stated that it was taking judicial notice of the complaint, Zanger raised her hand. The court did not allow Zanger to interject or give her an opportunity to voice her concern with its decision. Second, at the conclusion of the hearing, Zanger attempted to make the court aware that the summary process action had been withdrawn. Finally, the court failed to inquire into the basis for the housing authority's allegations or why it withdrew the action.

Accordingly, we conclude that the court erred by taking judicial notice of the contents of the summary process complaint without first providing the defendant with notice and an opportunity to be heard. Stating that the mere allegations in the complaint "buttress[ed]" the plaintiff's credibility significantly compounded the error. In part III of this opinion, we will address the harm to the defendant caused by the court's decision.

II

The defendant claims that the court erred by finding

him less credible because he did not appear at the hearing. We agree.

To reiterate, the court purported to make a credibility finding by stating that it "[found] that [the defendant's] position [was] much less credible, rendered so by the fact that [the defendant] chose not to appear" at the hearing. This statement falls outside of the purview of a typical credibility finding, in which a judge sees and hears a sworn witness testify. Thus, we are not tasked with evaluating the court's credibility determination itself, as it is the exclusive province of the finder of fact to make such determinations. *State* v. *Roy D. L.*, 339 Conn. 820, 849, 262 A.3d 712 (2021). Rather, we must consider whether the court properly considered the defendant's *absence* in making its credibility determination. This matter raises a question of law, and our review, therefore, is plenary. See *Travelers Property & Casualty Co.* v. *Christie*, 99 Conn. App. 747, 761, 916 A.2d 114 (2007) ("[a]lthough the question of relevancy, and thus admissibility, of evidence is subject to review for abuse of discretion, the question of whether an observation of the court properly can be subject to the relevancy analysis at all is a question of law, and therefore our review is plenary").

Although it is permissible for a court to draw an adverse inference from a party's failure to appear to testify at a scheduled hearing; see, e.g., *Norberg-Hurlburt* v. *Hurlburt*, 162 Conn. App. 661, 673, 133 A.3d 482 (2016); we are not aware of any authority that permits a court to make findings about a party's *credibility* based on his absence. The court, however, did not state that it was drawing an adverse inference from the defendant's absence. Instead, it explicitly stated that the defendant's absence weighed against the credibility of his position. This is not merely a distinction without a difference.

In support of his argument, the defendant cites *Travelers Property & Casualty Co.* v. *Christie*, supra, 99 Conn. App. 747, which we find instructive on this issue. In *Christie*, a hearing was held to determine, among other things, the amount that the self-represented defendant owed her appraiser for assessing the amount of loss caused to the defendant's home by a storm. Id., 749–50. The court ordered that the defendant pay the appraiser a certain amount and stated that the amount was reasonable because the appraiser " 'worked under very difficult, frustrating circumstances. Apparently, he had a very uncooperative client that frustrated him on many occasions.' " Id., 761. The court then stated that the defendant had " 'demonstrated in court during this several day hearing how difficult she [could] be, and her attitude and lack of cooperation may well have caused his bill to become higher than it would have been in an ordinary situation.' " Id.

On appeal, the defendant claimed that "it was improper for the court to consider her conduct in the courtroom,

when advocating her cause as evidence supporting the reasonableness of [the appraiser's] award." Id., 760. This court agreed, noting that the only question for the court to determine was the amount of funds to be distributed to the appraiser. Id., 762. This court stated that the defendant's "attitude and personality . . . was not evidence from which the court could infer that the appraiser's bill was necessarily higher than in 'an ordinary situation' . . . ." Id. Accordingly, this court held that the court's improper consideration of the defendant's demeanor was "harmful and necessitate[d] a new trial." Id.

In the present case, as in *Christie*, the court took into account conduct of the defendant, namely, his failure to appear, which was not evidence, to help it decide a substantive issue. Because the defendant, who was represented by counsel, did not testify at the hearing, there was no finding to be made as to his credibility. Accordingly, we conclude that the court erred by making a credibility determination with respect to the nonappearing defendant.

### III

We next address how the court's errors harmed to the defendant. At the hearing, the court stated in part that it "[found] that [the defendant's] position [was] much less credible" because (1) the defendant "chose not to appear" at the hearing, and (2) the summary process complaint contained many of the same allegations of serious nuisance made by the plaintiff, which "buttress[ed] some of the allegations that [the plaintiff] made" at the hearing. We conclude that each error alone warrants reversal. Taken together, given that this case essentially turned on credibility, we conclude that reversal is compelled.

First, the court's decision to take judicial notice of the summary process complaint resulted in harm to the defendant because the court relied in part on the allegations of that complaint when it made its factual findings. Although the court stated that it "did not find, as independent facts, the allegations" in the summary process complaint, it nevertheless found that "the allegations . . . *buttress*[ed] the credibility of the [plaintiff] . . . ." (Emphasis added.) The fact that the court relied on the allegations in the summary process complaint to buttress the credibility of the plaintiff indicates that the court did not take judicial notice of the summary process complaint solely to note the *existence* of the complaint. Rather, the court used those allegations to substantiate the plaintiff's allegations in the present case, stating that it relied on the summary process complaint because it contained "many of the same" allegations of serious nuisance made by the plaintiff in the present case.[8] Accordingly, the court relied on the truth of unproven allegations in the summary process complaint to bolster the credibility of the plaintiff in the

present case due to the similarity of the allegations in both cases.

Second, in finding that the defendant's position was less credible because of the defendant's absence, the court essentially weighed the defendant's credibility against that of the plaintiff. As we previously stated in this opinion, the defendant did not testify at the hearing, and, thus, there was no basis for the court to make a determination as to his credibility. Because the plaintiff testified about the allegations made in his application for a civil protection order, it was only his credibility that was at issue.

The record reveals that the court's decision to issue the civil protection order turned on its determination that the plaintiff was credible.[9] The court's determinations that (1) the defendant's absence hurt the credibility of his position, and (2) that the allegations in the summary process complaint "buttress[ed]" the plaintiff's credibility, undermine our confidence in the court's fact-finding process and warrant reversal of its decision. See *Mirjavadi* v. *Vakilzadeh*, 128 Conn. App. 61, 68, 18 A.3d 591 (2011) ("[w]here . . . some of the facts found [by the court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole" (internal quotation marks omitted)), aff'd, 310 Conn. 176, 74 A.3d 1278 (2013). Those factual findings served as a significant part of the basis for the court's decision to issue an order of civil protection against the defendant. Accordingly, we conclude that the court's determination that the defendant's absence made him less credible, combined with its reliance on the allegations in the summary process complaint, resulted in harm to the defendant. We therefore conclude that the court abused its discretion in issuing an order of civil protection.

The judgment is reversed and the case is remanded with direction to vacate the order of civil protection.

In this opinion the other judges concurred.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49; we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

[1] The plaintiff, who has been self-represented throughout these proceedings, did not file a brief in this court. We therefore decide the appeal on the basis of the defendant's brief and oral argument and the record.

[2] Pursuant to General Statutes § 46b-16a (b), upon receipt of an application for a civil protection order, the court "shall schedule a hearing not later than fourteen days from the date of the application." Section 46b-16a (b) further provides in relevant part that, before a hearing is held, "[i]f the court finds that there are reasonable grounds to believe that an imminent danger exists to the applicant, the court may issue an ex parte order granting such relief as it deems appropriate. . . ."

[3] A police report, which was entered into evidence as a full exhibit, indicates that an M-90 is a type of firecracker.

[4] The court attempted to locate the defendant during the hearing. The

court stated: "Just so it's clear, for the record, the clerk has attempted to call [the defendant] and the call went directly to his voicemail."

[5] The plaintiff's application does not contain allegations about the incidents involving the bug spray and the flashlight. The plaintiff, however, testified at the hearing that, on one occasion, the defendant pointed a can of bug spray in the plaintiff's face and threatened to spray him with it if he came any closer to the defendant. One of the police reports that was entered into evidence contains the plaintiff's allegations about that incident. The plaintiff also testified that, on another occasion, the defendant "came after" him with a flashlight.

[6] We reasonably can infer that the housing authority was referring to the same type of firecracker that was mentioned in the plaintiff's application and the police report. See footnote 3 of this opinion.

[7] Additionally, the record does not indicate that the court gave the parties notice that it intended to take judicial notice of the summary process complaint.

[8] We also disagree with the court's reliance on the fact that the allegations in the summary process complaint were made by attorneys who are bound by the Rules of Professional Conduct, including rules 3.3 and 4.1. That the allegations were made consistent with the attorneys' ethical obligations does not mean that they were true. The vast majority of cases that end in a judgment for a defendant begin with good faith allegations made by a plaintiff's attorney, consistent with the Rules of Professional Conduct.

[9] The court heard testimony from the plaintiff and DeGoursey. DeGoursey, however, only testified so that the defendant could introduce the police reports into evidence under the business records exception to the rule against hearsay contained in the Connecticut Code of Evidence. Thus, the only testimony about the alleged incidents giving rise to the issuance of the civil protection order came from the plaintiff.

————————————————